Appeal of **BLACK HILLS INDUSTRIAL FREEPORT, INC.,** a corporation.

Appeal of Hayden **THOMPSON,** d/b/a **Black Hills Pork Products,** a partnership, a/k/a **Thompson, Fruehelm and Hutton,** a partnership.

Nos. 12219, 12220.

Supreme Court of South Dakota.

July 20, 1978.

David P. Olson, Rapid City, for appellants Hayden Thompson, d/b/a Black Hills Pork Products, (#12219) and Black Hills Industrial Freeport, Inc., (#12220).

Roland E. Grosshans, State's Atty., Fall River County, Hot Springs, for respondent Fall River County, South Dakota.

MORGAN, Justice.

This is an appeal from a judgment entered by the circuit court affirming the action of the Board of County Commissioners of Fall River County, South Dakota, denying appellants' applications for abatements of certain real property taxes. The property involved is basically the old Black Hills Army Depot near the City of Edgemont in Fall River County, South Dakota. When the depot was phased out by the Department of Defense, the City of Edgemont (city) sought to establish an industrial park on the depot site. Through negotiations with the General Services Administration (GSA), the city acquired a portion of the land and facilities and in turn entered into agreements with the appellants to occupy and use the same under the provisions of Chapter 148 of the Session Laws of 1964, now codified as SDCL 9–54. The agreement between the city and GSA was a purchase agreement providing for payment over a span of years with acceleration privileges. The agreements between the city and the appellants were termed "Lease with option to purchase." Appellants entered into possession of the respective properties on December 30, 1968.

From December 30, 1968 until December 6, 1972, the property was classified tax exempt. However, on the latter date, it was reclassified "omitted property" and added to the county tax rolls. The appellants' requests for abatement were denied and these lawsuits resulted. By agreement,

the cases were combined and submitted to the trial court on a stipulation of facts.[1]

Appellants contend that they are exempt from the tax upon the land in question because both the legal and equitable title to such lands are held by tax exempt entities, as denominated under Article XI, § 5 of the South Dakota Constitution.

■ Respondents argued, and the trial court agreed, that the land was taxable because the agreement between the city and respondents, while in the form of a lease with a purchase option, was actually a contract for deed and that the city was acting only as a conduit of the property and was not the real owner thereof. With this we disagree and reverse the decision of the trial court.

Chapter 148 of the Session Laws of 1964 was clearly intended by the legislature for just such purpose as it was used in this case ". . . to encourage and assist in the location of new business and industry in this state . . . by providing greater employment opportunities . . . ." The chapter specified that cities in furtherance of this purpose may purchase sites and construct buildings for such uses and enter into lease-purchase agreements for such facilities. Conditions for payment and limitation of the city's liability to the revenue of the facility are clearly set out.

The similarity between the GSA contract and the lease agreement, with respect to terms for payment, apparently weighed heavily in the trial court's decision that the instrument was actually a contract for deed. However, a reading of the statute indicates the necessity for such similarity. The legislative scheme mandates that the lease payments meet all of the city's obligations. Furthermore, the legislative scheme mandated that the agreement between the city and the occupant be by lease purchase.[2]

It was not until 1972 and 1973 that the legislature changed the scheme by providing for "agreements of lease or sale."[3]

And it was not until 1975 that the legislature saw fit to provide for taxation revenues from such property by adding the following provision:

Agreements shall further provide for *payment of a sum equal to the amount of property tax which would be due if owned by the lessee,* to be prorated among the taxing districts involved and taking into consideration reductions permitted pursuant to §§ 10–6–35.1 through 10–6–35.3 inclusive for the term of the agreement. (Chap. 93, S.L. 1975) (Emphasis added.)

Apparently some cities had been incorporating such a provision in their lease-purchase agreements prior to the amendment because the legislature included a section validating and ratifying contracts and agreements entered into before the effective date of the amendment which provided for total or partial payment in lieu of taxes.

In any event, the amendment indicates a clear legislative intent that title to property subject to lease-purchase agreements entered into in accord with the scheme remain in the city-lessor.

■ Why the legislature did not see fit to make such provision in the initial enactment, whether through oversight or to offer tax incentive, is not for us to question; nor do we question why the city did not incorporate such a provision in their lease-purchase agreements as others apparently had. We do hold that the city was a viable active participant in the tax action, not merely a conduit. It dealt with GSA to purchase the property. We take judicial notice that under the provisions for surplus property in 40 U.S.C. § 444, the city, as a governmental subdivision, enjoyed certain privileges in the purchase of such property

---

1. The evidence having been submitted on a stipulation of facts, we are not bound by the clearly erroneous rule. *Ayres v. Junek,* 1976, S.D., 247 N.W.2d 488.

2. SDCL 9–54–1 and 9–54–2 respectively provide in relevant parts: "To enter into lease-purchase agreements" and "with power to enter into lease-purchase agreements."

3. Chapter 59, Session Laws of 1973, Section 2.

that individuals, whether persons or corporations, would not. Further, the city received a very real benefit in replacing the government payroll with other payrolls. In this regard, it is noteworthy that the lease-purchase agreement contained a requirement for a minimal number of full-time employees in the industrial park by the end of three years under penalty of default.

Having determined that the City of Edgemont is the equitable owner of the property, under its contract with the United States Government, subject only to the leasehold interest and options of appellants, then the next step is merely to apply the provisions of Article XI, § 5 of the South Dakota Constitution which reads in relevant part: "The property of the United States and of the state, county and municipal corporations both real and personal shall be exempt from taxes."

This constitutional provision is self-executing and has force and effect without enabling legislation. *Egan Consolidated School District v. Minnehaha County,* 1936, 65 S.D. 32, 270 N.W. 527.

In past cases, involving the question of whether municipal property should be taxed, this court has unequivocally held that the use of the property has no relevance.

The provisions of the Constitution are without limitation or condition. The location of public property or its use is not made a condition of exemption and the provisions apply alike and with the same effect to the United States, the state (except rural credit lands), counties and municipal corporations. . . . The unqualified exemption embraces all property of municipal corporations within the state *irrespective of use.* (Emphasis added.) *City of Yankton v. Madson,* 1945, 70 S.D. 627, 630, 20 N.W.2d 371, 372.

We therefore reverse the judgment of the trial court and remand the same with instructions to enter judgment in favor of appellants abating the property taxes in question.

All the Justices concur.