#28484-a-JMK
**2019 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF THE 2012, 2013 AND 2014 TAX REFUND
AND ABATEMENT APPEAL OF HUNT COMPANIES, INC.
f/k/a HUNT BUILDING CORPORATION.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GORDON SWANSON
Judge

\* \* \* \*

JOSEPH R. LUX
SHANE M. PULLMAN of
Costello Porter Hill Heisterkamp
  Bushnell & Carpenter, LLP
Rapid City, South Dakota            Attorneys for appellant
                                         Hunt Companies, Inc.


JOHN S. DORSEY of
Whiting, Hagg, Hagg, Dorsey
  & Hagg, LLP
Rapid City, South Dakota            Attorneys for appellee
                                         Meade County.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2018
OPINION FILED **05/01/19**

#28484

KERN, Justice

[¶1.]         Hunt Companies, Inc. (Hunt) built a housing development on land leased from the United States government. Hunt paid taxes assessed by Meade County (County) on the property for 2011, 2012, and 2013. Then, it appealed the assessed valuations, successfully challenging the County's valuations in circuit court. The County did not appeal the circuit court's decision; yet it subsequently denied Hunt's request for an abatement and refund. Hunt appealed, and the circuit court affirmed the denial. Hunt now appeals to this Court. We affirm.

## Facts and Procedural History

[¶2.]         The United States government owns land located near Box Elder in Meade County that includes Ellsworth Air Force Base. In the late 1980s, the federal government set aside approximately 235 acres within Ellsworth Air Force Base for Centennial Estates, a housing development for base personnel. On April 3, 1990, the federal government provided Hunt a 40-year land lease. The parties agreed Hunt would build 828 housing units on the property. For the first twenty years Hunt held the lease, the United States managed and maintained the development. The County did not assess taxes against Hunt during those twenty years.

[¶3.]         When the lease ended in August 2011, however, Hunt began managing the housing development, which is now known as Antelope Ridge. Because Hunt now acts as manager, the County assessed property taxes in 2011, 2012, and 2013 for the 2012, 2013, and 2014 tax years, respectively. For each of these years, the

-1-

County valued Hunt's taxable interest in the leasehold at $35,731,200 by using the fee simple value of the property.

[¶4.] Hunt paid the taxes assessed without invoking the pay-and-protest provisions of SDCL 10-27-2.[1] It then challenged the County's property-tax valuations by appealing to the Meade County Board of County Commissioners. The Board rejected Hunt's claims. Hunt appealed to the circuit court, filing a separate case for each of the three years the County assessed and taxed the value of Antelope Ridge. The appeals were consolidated for the circuit court's (Valuation court) consideration. Rather than focusing its attention on the County's constitutional authority to tax the leasehold interest altogether, Hunt argued to the Valuation court that the County erred by assessing the property at its fee simple value instead of its leasehold value.

---

1.    SDCL 10-27-2 provides:

> Any person against whom any tax is levied or who may be required to pay the tax, who pays the tax prior to the tax becoming delinquent and under protest to the treasurer authorized to collect the tax, giving notice at the time of payment of the reasons for such protest may, at any time within thirty days thereafter, commence an action against such treasurer for the recovery of the tax in any court of competent jurisdiction. If the court determines that the tax was wrongfully collected, in whole or in part, for any reason going to the merits of the tax, the court shall enter judgment accordingly, and such judgment shall be paid in preference to any other claim against the county, upon the final determination of the action. A pro rata share of the money so refunded shall be charged to the state and each taxing district which may have received any part of the tax. The right of appeal shall exist for both parties as in other civil actions.

[¶5.] Following a trial, the Valuation court issued findings of facts and conclusions of law on July 15, 2016, finding that "[t]he methods of valuation employed by Meade County . . . [were] inaccurate and unreliable." The court observed that "Article XI, Section 5 of the South Dakota Constitution forbids the valuation of real property owned by the United States of America[,]" and that the County "unconstitutionally valued the Antelope Ridge housing development as fee simple." Determining that Hunt only owed taxes on the leasehold interest, the Valuation court held that the "full and true value" of the leasehold interest was $14,100,000 for the 2012 tax year; $15,500,000 for the 2013 tax year; and $15,100,000 for the 2014 tax year. The court entered judgment reflecting its valuation. Neither Hunt nor the County appealed the Valuation court's rulings.

[¶6.] On October 16, 2016, Hunt filed an application with the Meade County Commission (Commission) under SDCL 10-18-1 for an abatement and refund of taxes overpaid. That statute provides in relevant part that:

> Unless otherwise expressly provided, if a person, against whom an assessment has been made or a tax levied, claims that the assessment or tax or any part of the assessment or tax is invalid for any reason provided in subdivisions (1) to (6), inclusive, the assessment or tax may be abated, or the tax refunded if paid. The board of county commissioners may abate or refund, in whole or in part, the invalid assessment or tax in the following cases only:
>
> > (1) If an error has been made in any identifying entry or description of the real property, in entering the valuation of the real property or in the extension of the tax, to the injury of the complainant;
> >
> > (2) If improvements on any real property were considered or included in the valuation of the real property, which did not exist on the real property at the time fixed by law for making the assessment;

(3)    If the complainant or the property is exempt from the tax;

(4)    If the complainant had no taxable interest in the property assessed against the complainant at the time fixed by law for making the assessments;

(5)    If taxes have been erroneously paid or error made in noting payment or issuing receipt for the taxes paid;

(6)    If the same property has been assessed against the complainant more than once in the same year, and the complainant produces satisfactory evidence that the tax for the year has been paid.

*Id.* The Commission denied the application, reasoning that Hunt's claims did not satisfy any of the provisions within SDCL 10-18-1. It further concluded that even if any of the provisions applied, it was not "'satisfied beyond a doubt' that the assessment [was] invalid, inequitable, or unjust[,]" citing SDCL 10-18-1.1.

[¶7.]    In December 2016, Hunt appealed the Commission's decision to the circuit court, arguing that subsections (1), (3), (4), and (5) applied. The County moved for summary judgment. The circuit court granted the motion on November 8, 2017, noting that "[a]s a threshold matter, . . . res judicata prevent[ed] re-litigation of the factual issues previously decided in the" Valuation court. The court then analyzed SDCL 10-18-1 and found that none of its provisions applied.

[¶8.]    With respect to SDCL 10-18-1(1), which permits relief when "an error has been made in any identifying entry or description of the real property," the court recognized that some of the findings of the Valuation court suggested the subsection applies. However, the circuit court noted that the previous appeal did not examine "the specific words contained in SDCL 10-18-1(1)[.]" Moreover, the circuit court relied on *Security National Bank v. Twinde*, and concluded that the errors referred to in SDCL 10-18-1(1) are clerical in nature, i.e., unintended

mistakes, and that no such errors were made here. 52 S.D. 352, 217 N.W. 542, 544 (1928).[2]

[¶9.] The circuit court next considered whether Hunt's request for relief implicated SDCL 10-18-1(3), which permits a refund if "the complainant or the property is exempt from the tax[.]" The court acknowledged that Antelope Ridge's fee simple owner—the United States—is tax exempt. However, the court stated that it would not "read the phrase 'exempt from tax' to mean 'partially exempt from tax[.]'" Thus, in the court's view, although the County could not tax the real property, it could tax the leasehold interest; accordingly, Antelope Ridge could not be considered "exempt from tax."

[¶10.] Next, the circuit court reviewed SDCL 10-18-1(4), which allows a refund "if the complainant had no taxable interest in the property assessed[.]" The court observed that because "Hunt had a taxable interest in the Antelope Ridge property," the court was "similarly unwilling to substitute other language for 'no' from subsection (4), such as 'less than full fee' or 'partial fee' taxable interest."

[¶11.] Finally, the circuit court addressed SDCL 10-18-1(5), which authorizes relief for taxes erroneously paid or for errors "made in noting payment or issuing receipt[.]" It concluded that "the term 'paid erroneously' in 10-18-1(5) does not refer to taxes that were paid on an incorrect valuation, but rather due to a clerical

---

2. Under Rev. Code 1919, § 6813, the predecessor to SDCL 10-18-1, a tax refund could be provided "[w]hen an error has been made in any identifying entry or description of the property, in entering the valuation thereof or in the extension of the tax, to the injury of the complainant." *Twinde*, 52 S.D. 352, 217 N.W. at 543.

mistake—i.e., the taxpayer mistakenly paying another taxpayer's bill." Therefore, the court held that SDCL 10-18-1(5) did not apply.

[¶12.] The circuit court also rejected Hunt's argument "that it could have elected to pursue either a pay and protest suit pursuant to SDCL 10-27-2" or apply for an abatement and refund under SDCL 10-18-1. The court, unpersuaded by Hunt's argument, noted that "[t]his seems to suggest that the [L]egislature intended to provide two separate mechanisms upon which to seek the same relief under identical circumstances: one with a 30-day limitation period, and one with a four-year limitation period."

[¶13.] While acknowledging that the two options provided "a different method of obtaining the same end, the refund of an unauthorized tax," *Casey v. Butte Cty.*, 52 S.D. 334, 217 N.W. 508, 510 (S.D. 1927), the court observed that neither our decision in *Casey* nor any other case it found "suggest[ed] that taxpayers, for any reason, could utilize either of the two methods to recoup taxes." The court further noted that, unlike here, "the subject property [in *Casey*] was exempt from tax for the period in question." The circuit court also highlighted our holding in *Riverview Properties, Ltd. v. South Dakota*, where we explained that SDCL 10-27-2 provides a limited window in which to appeal so as not to interrupt the assessment of taxes "by the unanticipated caprices of individual taxpayers and the consequent litigation of subsequent years." 439 N.W.2d 820, 823 (S.D. 1989) (quoting *Holbrook v. Gallagher,* 56 S.D. 54, 227 N.W. 461, 463 (1929)). Relying on this authority, the circuit court held that SDCL 10-18-1—which offers a four-year window—"should be strictly construed."

[¶14.]     Hunt moved the circuit court to reconsider, arguing that the County was constitutionally prohibited from taxing Antelope Ridge because it was constructed on land owned by the United States. The circuit court denied the motion, and Hunt appeals raising the following issues:

1.    Whether the County's tax assessment on Hunt's leasehold interest in Antelope Ridge violates the state and federal constitutions.

2.    Whether the circuit court erred by denying Hunt's application for abatement and refund under SDCL 10-18-1.

## Analysis and Decision

1.    *Whether Meade County's tax assessment on Hunt's leasehold interest in Antelope Ridge violates the state and federal constitutions.*

[¶15.]     Hunt argues that the County could not constitutionally assess taxes on his leasehold interest in Antelope Ridge. The County responds that Hunt failed to raise the argument that the leasehold was exempt from taxation in the Valuation court or before the circuit court in this action. In reply, Hunt submits that it preserved the issue by raising it before the circuit court via a motion for reconsideration prior to issuance of the final order. Alternatively, Hunt asks us to exercise our discretion and decide the constitutional question because it presents a matter of substantive law unaffected by any factual dispute.

[¶16.]     Hunt's constitutional argument is not properly before this Court. It likewise was not properly before the circuit court. In the litigation before the Valuation court, Hunt challenged the County's tax assessment as unconstitutional because it was based on the fee simple value of Antelope Ridge. The Valuation court entered a decision in Hunt's favor, reducing the valuation to that of Hunt's

leasehold interest. Because neither party appealed that decision, it has become final, thereby terminating further litigation on the issue of the value of Hunt's *taxable* interest. *See* Restatement (Second) of Judgments, §§ 17–18 (1982). As such, the taxable value of Hunt's interest is $14,100,000 for the 2012 tax year; $15,500,000 for the 2013 tax year; and $15,100,000 for the 2014 tax year.

[¶17.] This appeal, therefore, concerns only whether the County was required to grant Hunt's application for abatement and refund of taxes *overpaid* for the 2012, 2013, and 2014 tax years.

2. *Whether the circuit court erred by denying Hunt's application for abatement and refund under SDCL 10-18-1.*

[¶18.] Hunt concedes that it failed to utilize the pay-and-protest provisions of SDCL 10-27-2. Yet it argues that SDCL 10-18-1 provides an alternative avenue for the same relief. Hunt relies on subsections (1), (3), (4), and (5) for redress.

[¶19.] As the circuit court explained, however, subsections (1) and (5) refer to clerical errors or unintended mistakes, such as an individual accidentally paying the taxes of another. *See Twinde*, 217 N.W. at 544. Hunt responds that "*Twinde* merely held that subsection (1) does not allow recovery of property taxes in *every* case of overvaluation." However, the Court in *Twinde*, citing a prefatory note to the Revised Code of 1919, observed that the Legislature omitted the word "clerical" used before "error" in the statute's predecessor for simply stylistic purposes and that, substantively, the law should be interpreted no differently. *Id.* And SDCL 10-18-1, as it is currently written, is largely identical to the 1919 revision. Thus, only clerical errors may be appealed from under this subsection, and Hunt does not claim that such errors were made.

[¶20.]     With respect to subsection (5), we interpret "erroneously" to mean

"mistakenly."  As we explained in *Twinde*:

> So construed, taxes would be erroneously paid *when the property was exempt from taxation* or if the complainant was not the owner of the property, and in fact would be erroneously paid in this sense when paid in any situation presented in all of the six subdivisions of the section.  We cannot ascribe to the Legislature the sedulous ineptitude implied in the supposition that it painstakingly enumerated in six separate subdivisions the specific situations in which a refund might be had if the plain language of one of the shortest of the subdivisions covered every situation enumerated in all the others.

*Id.* (emphasis added).

[¶21.]     In regard to subsections (3) and (4), we assume Hunt's leasehold

interest was taxable because Hunt did not challenge the taxability of his leasehold

interest in the Valuation appeal.  In each of its three notices of appeal in the

Valuation litigation, Hunt alleged only that its interest was incorrectly valued.

This argument implicates Article XI, § 2, of the South Dakota Constitution, which

requires uniform taxation at its correct value.  Hunt's notice of appeal stated:

> This Appeal is brought to challenge the accuracy and methods employed in valuation of the assessment because statutory mandates have not been substantially complied with, *the subject property is excessively assessed inasmuch as the property is assessed at higher than its full and true value* in money and is discriminatory and is not assessed in uniformity with comparable properties and the assessment is grossly unjust and inequitable, all in violation of the Constitution (S.D. Const. art. XI, § 2) and the laws of this State.

(Emphasis added.)

[¶22.]     Significantly, Hunt did not invoke Article XI, § 5, of the South

Dakota Constitution, which exempts property of the United States from

taxation. Indeed, the parties and the Valuation court proceeded on the implicit premise that Hunt's leasehold interest was taxable.[3] Moreover, the Valuation court did not base its analysis upon the exempt nature of the United States' fee interest. Rather, the Valuation court considered evidence relating to different valuation methods and applied the "income method" in reaching its decision to reduce the original valuation. Because Hunt possessed, for purposes of this appeal, a taxable leasehold interest, subsections (3) and (4) do not apply.

[¶23.]     Hunt argues, however, that not reading the word "partially" into subsection (3) and not interpreting subsection (4) results in the County's "retention of . . . ill-gotten tax moneys." We disagree. SDCL 10-18-1 allows for an abatement or refund "only" in the enumerated subdivisions (1) to (6). *Id.* Subsection (3) allows for such relief in two situations: (1) when the complainant is exempt from taxation; or (2) when the property is exempt from taxation. Neither situation exists here, and the manner in which Hunt framed the earlier Valuation appeal confirms as much.

[¶24.]     "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with the view to their place in the overall statutory scheme.'" *Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d 350, 352 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301, 146 L. Ed. 2d 121 (2000)). In this instance, Title 10 provides two avenues of relief when a tax is improperly levied against a person or entity—pay and protest (SDCL 10-27-2) and abatement of an erroneous

---

3.     We express no opinion here on the question of whether the leasehold interest was, in fact, taxable.

tax assessment (SDCL 10-18-1). The pay-and-protest provisions afford taxpayers broad relief within a limited window (thirty days), while the erroneous tax assessment statute provides much narrower relief over a longer time period (four years). Reading these provisions in context indicates the Legislature intended SDCL 10-18-1 to be construed narrowly, applying only to the situations listed therein in light of the longer period for recovery. A narrow reading is justified because SDCL 10-27-2 provides taxpayers with broader grounds for relief, albeit for a shorter period of time.

[¶25.]     Hunt had relief available; yet, as Hunt itself admits, it chose not to use the pay-and-protest provisions of SDCL 10-27-2. Hunt also does not attack the constitutionality of, for example, the limited thirty-day window SDCL 10-27-2 provides. Rather, it would have us stretch the language of SDCL 10-18-1 to accommodate its choice not to use the remedy fashioned by the Legislature. And as the circuit court explained, the State possesses a strong interest in ensuring the timely collection of taxes, finality in assessments, and the regular functioning of counties.

[¶26.]     We are mindful of the enormity of the County's overvaluation of Hunt's leasehold interest. Yet we also cannot interpret SDCL chapter 10-18 simply to avoid this result. Therefore, we affirm the circuit court's decision upholding the County's rejection of Hunt's request.

[¶27.]     GILBERTSON, Chief Justice, and SALTER, Justice, concur.

[¶28.]     JENSEN, Justice, dissents.

JENSEN, Justice (dissenting).

[¶29.] I dissent because the Valuation court had previously determined the assessments at issue were invalid under the exemption for public property, in Article XI, § 5 of the South Dakota Constitution. As a result, Hunt was entitled to request a tax refund under SDCL 10-18-1(3) for the years at issue and the County failed to properly exercise its discretion when it denied the request.

[¶30.] The Valuation court found that the "United States of America owns the real property on which is located the Antelope Ridge housing development" and that Hunt "has nothing more than a leasehold interest in the 235 acres of Antelope Ridge housing development." The court further found that the County's assessments had "valued the fee simple interest of the property for each year under appeal, which is unconstitutional pursuant to Article XI, [§] 5 of [the] South Dakota Constitution[.]" In its conclusions of law, the Valuation court applied Article XI, § 5, which "forbids the valuation of real property owned by the United States of America when it recites: 'The property of the United States . . . shall be exempt from taxation.'" The Valuation court then concluded that "Meade County unconstitutionally valued the fee simple interest in determining [Hunt's] interest in Antelope Ridge in each of the years under appeal." Only after determining the United States' fee simple interest was exempt did the Valuation court consider the valuation methods for determining the full and true value of Hunt's leasehold interest.

[¶31.] Neither party chose to appeal the Valuation court's decision. I agree with the majority that the Valuation court's decision is res judicata for both Hunt

and the County for the assessment years 2011, 2012, and 2013. *See Shevling v. Butte Cty. Bd. of Comm'rs*, 1999 S.D. 88, ¶ 25 596 N.W.2d 728, 732. As such, Hunt is precluded from now claiming that its leasehold is also exempt from taxation for those years under Article XI, § 5 of the South Dakota Constitution and this Court's prior decisions in *Petition of C M Corp.,* 334 N.W.2d 675, 677 (S.D. 1983) and *In re Black Hills Indus. Freeport, Inc.,* 268 N.W.2d 489, 491 (S.D. 1978). Likewise, the County is precluded from challenging that Hunt paid taxes to the County for the years 2012 to 2014 on the exempt property owned by the federal government.

[¶32.]     Hunt's request for a refund for the tax years 2012 to 2014 should have been considered by the County under subsection (3) of SDCL 10-18-1. The text of the statute as relevant to subsection (3) provides:

> Unless otherwise expressly provided, *if a person*, against whom an assessment has been made or a tax levied, claims that the assessment or tax *or any part of the assessment or tax is invalid for any reason provided in subdivisions (1) to (6), inclusive*, the assessment or tax may be abated, or the tax refunded if paid. The board of county commissioners may abate or refund, in whole or in part, the invalid assessment or tax in the following cases only:
>
> . . .
>
> (3) If the complainant or the property is exempt from the tax . . . .

(Emphasis added.)

[¶33.]     Under SDCL 10-18-1(3), a person is eligible to request an abatement or refund when an assessment or tax is invalid in whole, or in part, because it was assessed or levied on exempt property. Under the plain language of the statute, "part of the assessment [and] tax" on Antelope Ridge was invalid because it was levied on property that was exempt from tax. "When the language in a statute is

-13-

clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Long v. State*, 2017 S.D. 78, ¶ 13, 904 N.W.2d 358, 364.

[¶34.]    The circuit court erred in affirming the County's decision that SDCL 10-18-1(3) was inapplicable to Hunt's application. Specifically, the court failed to consider all of the operative language of the statute. Instead, the court confined its reading to the phrase "the property is exempt from taxation" in subsection (3), stating it was unwilling to read the word "partially" exempt into this phrase. However, inserting the word "partially" in subsection (3) was unnecessary and entirely superfluous to the existing language providing that an assessment or tax may be abated or refunded if "the assessment or tax *or any part of the assessment or tax is invalid*" because it was levied on exempt property. SDCL 10-18-1(3). By failing to consider all of the language in the statute, the circuit court essentially read the italicized language out of the statute.[4] We will not interpret a statute so as to "nullify and make meaningless" a part of the statute. *State v. Miranda*, 2009 S.D. 105, ¶ 23, 776 N.W.2d 77, 83; *see also Peterson v. Burns,* 2001 S.D. 126, ¶ 30, 635 N.W.2d 556, 567–68 ("We should not adopt an interpretation of a statute that renders the statute [or part of it] meaningless . . . .").

---

4.    The Legislature has created a number of statutory exemptions to ad valorem tax for certain land owners, or activities on the land. Many of these statutes recognize that only a portion of the property may be exempt from taxation for various reasons. *See* SDCL 10-4-9.2 to -13.2, -16. Yet, by improperly reading the language "any part of the assessment or tax" out of SDCL 10-18-1, the circuit court's interpretation, adopted by the majority opinion, effectively forecloses any person from seeking an abatement or refund on real property that is partially exempt under these statutes.

[¶35.]     The determination that the County and the circuit court erred in considering Hunt's application for an abatement or refund under SDCL 10-18-1(3) does not end the analysis. Even if some or all of the assessment or tax is invalid under any one of the subsections in SDCL 10-18-1, the County is still afforded discretion under SDCL 10-18-1 and 10-18-1.1 to grant or deny an application for an abatement or refund. Under SDCL 10-18-1, if an "assessment or tax or any part of the assessment or tax is invalid" for any of the enumerated reasons, the County maintains discretion to determine whether to abate or refund, some or all, of the assessment or tax. SDCL 10-18-1.1 further explains the County's discretion by providing that

> [i]f the board of county commissioners is satisfied beyond a doubt that the assessment of real property described in an application for abatement or refund under the provisions of § 10-18-1 is invalid, inequitable, or unjust, the board . . . may abate or refund any part thereof in excess of the just, fair, and equitable assessment.

[¶36.]     In denying Hunt's application, the County's resolution determined that the application did not fit any of the cases described in subsections (1) through (6) of SDCL 10-18-1. Alternatively, the resolution stated that even if Hunt's application was correctly assessed before the County, the County was not "satisfied beyond doubt" that the assessment was invalid, inequitable, or unjust. During the proceedings before the County Commission, the only reasons expressed by the County Commission to deny Hunt's application were that: (1) none of the sections were applicable, and (2) Hunt had failed to avail itself of the "pay and protest" remedy in SDCL 10-27-2, which was the sole remedy available after the taxes were paid. Although any refund to Hunt likely would have been significant, the County

failed to determine the amount of the invalid tax arising from the assessments on exempt property, or otherwise exercise its discretion to consider whether any refund of the invalid tax was appropriate under all the circumstances.

[¶37.] The two factors the County considered to deny the abatement and refund were erroneous. First, the County had no discretion to misinterpret SDCL 10-18-1(3). Even under a narrow construction of the statute, Hunt's request squarely fit within SDCL 10-18-1(3) because part of the assessment and tax on Antelope Ridge was levied upon exempt property owned by the federal government. The County chose not to appeal the Valuation court's decision and improperly disregarded the import of the decision under SDCL 10-18-1(3).

[¶38.] Second, the County misapplied the statutes when determining that "pay and protest" under SDCL 10-27-2 was the sole remedy available for Hunt. SDCL 10-27-1 provides that "pay and protest" in SDCL ch. 10-27 is the sole remedy to challenge a tax as illegal or wrongful, "*except as otherwise expressly provided by this code*" (emphasis added). One of the legislatively created exceptions to the "pay and protest" remedy is the abatement and refund provisions in SDCL ch. 10-18.

[¶39.] In *Casey v. Butte Cty.,* 52 S.D. 334, 217 N.W. 508, 510 (1927), the Court rejected a claim that "pay and protest" was the sole remedy to challenge or seek a refund of taxes paid on exempt property. The Court held that the abatement and refund remedy was available to a taxpayer seeking a refund of taxes paid in prior years on exempt property, stating:

> We find no conflict between the provisions of section 6813 (abatement and refund) and those of section 6826 (pay and protest); each provides a different method of obtaining the same end, the refund of an unauthorized tax. This is clear from the

> language of section 6819, providing for the right of appeal from the decision of the board of county commissioners on an application for refund, where it is stated that the right to proceed under the provisions of this Code relating to actions to recover taxes paid under protest is not qualified or limited by the article relating to application to the board of county commissioners for a refund.

*Id.*

[¶40.] In *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Bd. of Comm'rs*, 248 N.W.2d 386, 389 (S.D. 1976), this Court reaffirmed this holding, stating "[o]ne remedy excepted from the protest and suit statute is the refund and abatement statutes found in SDCL 10-18-1 and 10-18-2 as provided in SDCL 10-18-12." The County's determination that "pay and protest" was the sole remedy for seeking a refund of taxes paid was not a proper exercise of discretion.

[¶41.] Finally, in view of its disregard of the Valuation court's decision and the lack of any determination as to the amount of invalid tax that Hunt paid, the County improperly determined that it was not "satisfied beyond doubt" that the assessment was invalid, inequitable, or unjust.[5] SDCL 10-18-1.1 provides the County with broad discretion to consider any refund of an invalid tax, but the County must articulate objective and valid reasons for exercising this discretion, which the County failed to do.

[¶42.] I would reverse and remand to the circuit court with directions to remand Hunt's application to the County. I would direct the County to determine

---

5. The record is silent as to whether the County considered the impact of a refund on the tax districts that might be charged under SDCL 10-18-10. The record suggests that the City of Box Elder may have been "deemed to have concurred in granting the application" under SDCL 10-18-7, but this question was not resolved by the County Commission.

the amount of invalid tax paid by Hunt on the exempt portion of the federal government's fee interest for the tax years 2012 to 2014. The County should then exercise its discretion under SDCL 10-18-1 and SDCL 10-18-1.1 to consider whether any portion of the taxes paid by Hunt on the exempt property should be refunded.