#29952-r-MES
**2024 S.D. 12**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

STEVEN MICHAEL FOSHAY,                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JENNIFER MAMMENGA
Judge

* * * *

BETSY DOYLE of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                  Attorneys for defendant
                                   and appellant.

MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                   and appellee.

* * * *

ARGUED
MARCH 22, 2023
OPINION FILED **02/21/24**

#29952

SALTER, Justice

[¶1.]     In 2017, the circuit court determined that Steven Foshay was incompetent to stand trial on four criminal charges. The court committed him to a state facility for competency restoration treatment. These efforts have not been successful, and as a result of a series of "re-commitments," Foshay remains committed. In a 2021 motion, Foshay sought dismissal of his criminal charges under SDCL 23A-10A-14, which requires dismissal of a defendant's criminal charges when "there is no substantial probability that the defendant will become competent to proceed in the foreseeable future." The circuit court denied his motion. Foshay requested intermediate review, which we granted. We reverse.

## Factual and Procedural Background

[¶2.]     On September 14, 2016, Foshay was indicted by a grand jury on four criminal counts. Two counts alleged that Foshay had committed first-degree rape in violation of SDCL 22-22-1(1), and two counts alleged that Foshay had committed sexual contact with a child under the age of sixteen in violation of SDCL 22-22-7.

[¶3.]     Appointed counsel for Foshay filed a motion for a psychological examination in November 2016. The circuit court granted Foshay's motion, and Foshay was evaluated by Dr. Ken Hasseler, a licensed psychologist. In a written report, Dr. Hasseler concluded that Foshay suffered from severely impaired cognitive functioning that was unlikely to improve with time or treatment.

[¶4.]     Relying on Dr. Hasseler's report, the circuit court found at a February 2017 competency hearing that Foshay was mentally incompetent to proceed because

-1-

"he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]"

[¶5.]     Consequently, the circuit court committed Foshay to the Human Services Center (HSC) for "a reasonable period of time not to exceed four (4) months, pursuant to [SDCL] 23A-10A-4." The court further ordered that if the HSC did not certify Foshay as competent to proceed within four months, "the [HSC] shall submit a report to the Court explaining the Defendant's progress in treatment and giving an opinion as to whether or not there is a substantial probability that in the foreseeable future the Defendant will become competent to stand trial[.]"

[¶6.]     The four-month period expired without a certification that Foshay was competent to stand trial, and the circuit court conducted a competency hearing in July 2017. The court considered a psychological evaluation of Foshay conducted by Dr. Kirk Zimbelman, a clinical psychologist and the director of psychology at the HSC. Dr. Zimbelman's report related that Foshay continued to "suffer from a Developmental Disability, rendering him mentally incompetent to the extent that he is unable to understand rationally the nature and consequences of the proceedings against him or assist properly in his defense." According to Dr. Zimbelman, there was some possibility with "vigorous and sustained restoration efforts" that Foshay could attain competency but not within the next year. The court did not make a finding as to the likely length of Foshay's incompetency, and the court again committed Foshay to a competency restoration program, this time for a reasonable period to not exceed one year.

[¶7.]    The director of the South Dakota Developmental Center, where Foshay was committed at that time, certified on June 19, 2018, that Foshay was competent to stand trial. This prompted a September 14, 2018 competency hearing during which the circuit court heard testimony from two mental health professionals with diverging views as to the question of Foshay's competency. Tonja Jungwirth, a behavioral therapist and licensed professional counselor, stated in her report that Foshay chronically suffered from a "mild intellectual disability[,]" but that he "would be able to assist his attorney in his defense with the assistance of his family." In contrast, Dr. Hasseler's opinion regarding Foshay's competency remained unchanged despite the passage of time since the earlier 2017 assessment. In his 2018 report, Dr. Hasseler stated that while Foshay's "knowledge and understanding of the courtroom and basic legal concepts has improved with competency training," he still lacked the ability to participate in "his defense due to impaired decision making capacity and reasoning."

[¶8.]    The circuit court accepted Dr. Hasseler's opinions and determined Foshay remained incompetent to proceed. The court again did not make any findings regarding the likely duration of Foshay's incompetency and committed him, as it had done the previous year, "for such reasonable period of time not to exceed one (1) year[.]" The court ordered that, absent a certificate of recovery, "the [HSC] shall submit a report to the Court explaining the Defendant's progress in treatment and giving an opinion as to whether or not there is a substantial probability that in the foreseeable future the Defendant will become competent to stand trial[.]"

[¶9.]    The following year (2019), the circuit court received a report by Dr. Ada Powell, a licensed psychologist.  In Dr. Powell's opinion, Foshay continued to suffer from a developmental disability and would "remain incompetent to assist properly in his own defense well into the foreseeable future."  After a competency hearing[1] on October 7, 2019, the court again committed Foshay for a reasonable period, not to exceed one year.  The order indicated, as the previous commitment orders had, that absent a certificate of competency, the facility was required to issue a report regarding "whether or not there is a substantial probability that the Defendant will become competent to stand trial within the next year."

[¶10.]    The circuit court conducted another competency hearing on October 20, 2020.  Prior to the hearing, the circuit court received a written competency report prepared by Jungwirth.  Unlike her earlier 2018 opinion regarding Foshay's competency, Jungwirth's 2020 report included the opinion that Foshay "is *not* competent to face the charges he is presently facing and is not likely to be found competent in the next year."  (Emphasis added.)  The opinion was not disputed by either party, and the court's resulting commitment order was virtually identical to the previous ones—Foshay was committed for a reasonable period, not to exceed one

---

1.    The parties have referred to these competency hearings as "review hearings," but this is not accurate.  As explained more fully below, a court conducts a statutory annual review hearing only when an individual is committed under SDCL 23A-10A-15, which authorizes longer commitments that are not limited to one year.  But here, it appears Foshay was never committed to a definite term under SDCL 23A-10A-15, and the "review hearings" referenced by the parties appear to have been hearings that roughly corresponded with the expiration of the earlier commitment at which the circuit court ordered a new commitment under SDCL 23A-10A-14.

year, and the facility had the same obligation to report on the results of its competency restoration efforts.

[¶11.]    In 2021, Dr. Jungwirth[2] prepared an updated report which stated that Foshay "is not competent to face the charges he is presently facing and is not likely to be found competent in the next year." According to the transcript from a November 19, 2021 hearing, the circuit court adopted Dr. Jungwirth's findings and committed Foshay for "an additional period of one year[.]" The record does not contain a written order reflecting this determination. Also notable is the fact that the incompetency finding was made after the court and parties scheduled a December 2021 hearing on Foshay's then-pending motion to dismiss.

[¶12.]    In his motion to dismiss the four criminal charges, Foshay focused on a provision of SDCL 23A-10A-14 that was added by the Legislature in 2021 requiring the court to "dismiss the criminal charges" in instances where "the court finds that there is no substantial probability that the defendant will become competent to proceed in the foreseeable future[.]"[3] Highlighting the fact that he had been

_____

2.    At earlier points in this case, Dr. Jungwirth had been a masters-level counselor who was also a doctoral candidate pursuing a doctor of psychology (PsyD). She completed her studies and received her PsyD at some point prior to her 2021 evaluation.

3.    The amended version of SDCL 23A-10A-14 also provides that, in the event of dismissal, the director of the facility where the defendant was committed could "recommend that the prosecutor file a petition for civil commitment proceedings." Previously, South Dakota did not include a civil commitment procedure for dangerous individuals (other than perhaps SDCL chapter 27A-1 relating to the treatment of individuals with mental illness), but during its 2023 session, the Legislature passed House Bill 1174 which allows for civil commitment for individuals whose charges are "dismissed pursuant to § 23A-10A-14." In general terms, individuals are potentially subject to civil

(continued . . .)

committed and detained due to incompetency for almost five years, Foshay argued

that "[n]othing in the record suggests that there is a substantial possibility that the

defendant will attain capacity to proceed in the foreseeable future."

[¶13.]     The circuit court conducted a hearing on Foshay's motion to dismiss on

December 7, 2021.  Dr. Jungwirth was the only witness.  She testified that there

was no substantial likelihood that Foshay would become competent in the

foreseeable future, though she did not foreclose the possibility that he may recover

competency at some point beyond the foreseeable future.  In response to questions

from the court, Dr. Jungwirth also testified that several of Foshay's competency

metrics had declined since 2018, which she believed could be attributed to

distancing restrictions during the COVID-19 pandemic hindering competency

restoration efforts.  However, Dr. Jungwirth's overarching opinion—that there is no

substantial likelihood that Foshay would become competent in the foreseeable

future—remained unchanged.

[¶14.]     The circuit court issued a memorandum opinion and order denying

Foshay's motion.  In its analysis, the court quoted the pre-2021 versions of SDCL

23A-10A-14 and 23A-10A-15, which did not include the amended language of SDCL

23A-10A-14 that was the basis of Foshay's motion.[4]  Nevertheless, the court

---

(. . . continued)
        commitment when they experience "difficulty controlling their behavior and
        it is likely that the person will commit other sexual offenses[.]"  H.B. 1174.

4.      The provisions of SDCL 23A-10A-15 also authorize dismissal in cases where
        the individual has reached the end of the specific term ordered by the court
        without a restoration of competency.  However, the Legislature's recent civil
                                                              (continued . . .)

acknowledged the United States Supreme Court's decision in *Jackson v. Indiana*, holding that state laws which allow for the indefinite commitment of a defendant solely due to incompetency violate the Due Process Clause of the Fourteenth Amendment. 406 U.S. 715, 731, 92 S. Ct. 1845, 1854, 32 L. Ed. 2d 435 (1972).

[¶15.] Although Foshay had been committed for a considerable period of time, the circuit court stated that "there have been conflicting opinions from mental health professionals who have evaluated Foshay." This was an apparent reference to Dr. Jungwirth's original 2018 opinion, though the court found this initial opinion unconvincing at the time, and Dr. Jungwirth has not since repeated this view. Indeed, in all of Dr. Jungwirth's subsequent reports, she has stated that Foshay was not competent and not likely to be restored to competency either within the next year or, as was the case at the December 2021 hearing, in the foreseeable future.

[¶16.] This latter opinion corresponds with the standard for dismissal now set out in SDCL 23A-10A-14. The circuit court's findings, however, were not consistent with this standard. The court found that Foshay was "not currently competent to stand trial; however, the *Court does not find that there is no substantial probability that he will attain competency in the foreseeable future due to the impact of COVID-19 protocols on competency restoration education and evaluation procedures*." (Emphasis added.)

---

(. . . continued)

commitment statute, see supra note 3, appears to authorize civil commitments only after a dismissal under SDCL 23A-10A-14.

[¶17.] We granted Foshay's petition for intermediate appeal and now consider whether the circuit court erred when it denied Foshay's motion to dismiss the charges against him. While the parties' appellate briefing focused on the factual question of whether Foshay was likely to become competent in the foreseeable future, we noted that the court's successive one-year commitments and lack of findings concerning the likely length of Foshay's incompetency may signal broader statutory noncompliance throughout the time he has been committed. Therefore, we issued a letter to the parties prior to oral argument stating:

> Please be prepared to discuss the statutory authority under which the Defendant is currently held and has been held following the Order to Commit, dated July 7, 2017, what findings were necessary for these orders consistent with the statute in effect at the time each order was entered, and whether those findings were made. Specifically, please be prepared to discuss whether the Defendant has ever been committed to a specific term under SDCL 23A-10A-15, or whether the Defendant has been committed to a series of successive one-year commitments under SDCL 23A-10A-14.

### Standard of Review

[¶18.] If there is "no substantial probability that the defendant will become competent to proceed in the foreseeable future," the provisions of SDCL 23A-10A-14 are quite clear about the court's obligation—"the court shall dismiss the criminal charges against the defendant." Whether the circuit court correctly applied this statutory standard is a legal question, as are several related statutory compliance questions we discuss below involving other sections contained within SDCL chapter

23A-10A. We review these legal questions de novo.[5] *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166 (quoting *In re Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350, 351). However, we review factual determinations relating to SDCL 23A-10A-14's no-substantial-probability determination, as we would any other fact, for clear error. *See Smith v. WIPI Group, USA, Inc.*, 2023 S.D. 48, ¶ 34, 996 N.W.2d 368, 378 ("We review a circuit court's findings of fact for clear error." (citing *Mathis Implement Co. v. Heath*, 2003 S.D. 72, ¶ 9, 665 N.W.2d 90, 92)).

## Analysis and Decision

[¶19.]     A person who is not competent may not be tried or punished for a criminal charge. *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 904, 43 L. Ed. 2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). Our Legislature has enacted a broad

---

5.     The parties suggest that we should review the circuit court's denial of Foshay's motion to dismiss for an abuse of discretion, but the court did not exercise its discretion here. Still, in some cases, there are discretionary determinations a circuit court must make that follow the statutory requirements set out below that would be reviewed for an abuse of discretion. For example, once a court finds there is a substantial probability that a defendant will become competent to proceed within the next year and complies with the statutory dictate that it *shall* order the defendant to be placed in a competency restoration program, the court has discretion to determine the specific duration of the placement, so long as the duration does not exceed one year. SDCL 23A-10A-14. Likewise, we would review the length of a court's placement under SDCL 23A-10A-15 for an abuse of discretion in cases where the court finds that there is no substantial probability that the defendant will become competent to proceed within one year but there is a substantial probability that a defendant will become competent in the foreseeable future and also in cases where the one year period runs without the issuance of a certificate of recovery. *Id.*

statutory prohibition upon trying and punishing individuals who are not competent. *See* SDCL 23A-10A-2 ("A person cannot be tried, sentenced, or punished for any public offense while he is mentally incompetent to proceed."). The Legislature has also included within chapter 23A-10A a detailed procedure for evaluating criminal defendants to assess their competency and, where authorized, commit them in order to provide competency restoration efforts so that they may be tried, if possible. *See generally* SDCL ch. 23A-10A (entitled, "Inquiry into Defendant's Mental Competency to Proceed"). The United States Supreme Court has recognized that these state laws implicate the due process protections of the United States Constitution's Fourteenth Amendment. *Jackson*, 406 U.S. at 720, 92 S. Ct. at 1849.

[¶20.] In *Jackson*, the Supreme Court specifically held that "a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738. As a corollary, an "indefinite commitment" for an incompetent person is not a reasonable period of time and "does not square with the Fourteenth Amendment's guarantee of due process." *Id.* at 731.

[¶21.] Foshay relates *Jackson* to SDCL 23A-10A-14 and argues that the circuit court should have dismissed the 2017 charges because the only evidence at the December 2021 hearing established that Foshay remains incompetent and there is no substantial probability he will become competent in the foreseeable future. To properly address this claim, however, we must first explain that SDCL 23A-10A-14 is only implicated here because of statutory noncompliance throughout the

pendency of Foshay's case that prevented a commitment for a definite time period under SDCL 23A-10A-15. This noncompliance led to an indefinite loop of one-year commitment orders for which there has been no terminal point short of becoming competent until, that is, the Legislature amended SDCL 23A-10A-14 to provide a means for dismissal in cases of interminable incompetency.

[¶22.] When executed correctly, chapter 23A-10A puts committed criminal defendants on a determinate path that has—in a manner of speaking—a beginning, a middle, and an end. The process begins with a motion seeking a competency assessment under SDCL 23A-10A-3. If the court finds that the defendant is "mentally incompetent to proceed,"[6] the court shall order the defendant committed for treatment "for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the trial to proceed." SDCL 23A-10A-4.

[¶23.] After this initial evaluation period, "the court shall set a time for hearing to determine whether there is a substantial probability that the defendant will become competent to proceed and whether there is a substantial probability that it will occur within the next year." SDCL 23A-10A-14. This finding is critical,

---

6. A person is "mentally incompetent to proceed" and cannot, therefore, be tried or punished if the person "is suffering from a mental disease, developmental disability, as defined in § 27B-1-18, or psychological, physiological, or etiological condition rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." SDCL 23A-10A-1.

and as amended in 2021, SDCL 23A-10A-14 allows for only three potential outcomes:

> [1.] *If the court finds there is a substantial probability that the defendant will become competent to proceed within the next year, the court shall order the defendant to be placed in a restoration to competency program* under the direction of an approved facility, committed to an approved facility, or placed on outpatient status for restoration to competency if the defendant is not considered to be a danger to the health and safety of others *for an additional specified period of time, not to exceed one year*, or until the director of the facility issues a certificate of recovery pursuant to § 23A-10A-4.1.

> [2.] *If the court finds there is no substantial probability that the defendant will become competent to proceed within one year but there is a substantial probability that the defendant will become competent in the foreseeable future, the court shall review the defendant's condition to determine appropriate placement and order the defendant to be placed in a restoration to competency program* under the direction of an approved facility, committed to an approved facility, or to be placed on outpatient status for restoration to competency if the defendant is not considered to be a danger to the health and safety of others *for a term consistent with § 23A-10A-15.*

> . . .

> [3.] *If the court finds that there is no substantial probability that the defendant will become competent to proceed in the foreseeable future, the court shall dismiss the criminal charges against the defendant.* If the director of the facility determines there is probable cause to believe that the defendant is a danger to self or others if the defendant is released, the director shall include the basis for that determination in the report and may recommend that the prosecutor file a petition for civil commitment proceedings.

(Emphasis added.)

[¶24.]	As these statutory provisions illustrate, the court's finding regarding the likely duration of the defendant's incompetency is necessary to determine the next step in the course of the defendant's pretrial commitment and, ultimately, the

criminal case itself. Where a defendant remains incompetent after the initial evaluation period, the circuit court must determine whether there is a substantial probability that the defendant will become competent in the next year, or not.[7]

[¶25.] If the circuit court finds the former, it can continue the defendant's commitment for no more than one year under SDCL 23A-10A-14. Both the current and previous versions of the statute state, "If *the one year* provided for in this section has run without a certificate of recovery being issued . . . the court shall . . . order the defendant's placement in a restoration to competency program . . . for a term consistent with § 23A-10A-15." SDCL 23A-10A-14 (emphasis added) (2021); SDCL 23A-10A-14 (2020). However, if the court finds the there is a substantial probability that the defendant will become competent but not in the next year, the court must order a placement, which could include commitment, to pursue competency restoration for a term of years under the provisions of SDCL 23A-10A-15.

[¶26.] Commitments under SDCL 23A-10A-15 have fewer temporal restrictions and can extend beyond one year. In 2018, the statute provided in relevant part:

> If the most serious charge against the defendant is a Class A or B felony, the *order of detention shall be for any period of time deemed reasonable by the court* or until the charges have been dismissed by the prosecution. The order for detention may not exceed the maximum penalty allowable for the most serious charge facing the defendant. Upon expiration of the order of

---

7. Under the pre-2021 version of SDCL 23A-10A-14, after the four-month evaluation period, the court was required to find "whether the defendant is *reasonably likely* to become competent to proceed within the next year." SDCL 23A-10A-14 (2020) (emphasis added).

> detention, . . . the criminal charges against the defendant shall be dismissed. . . .
>
> Every twelve months thereafter the director of the approved facility shall notify the court if the defendant is still in the approved facility pursuant to this chapter, and the circuit court shall hold a hearing to review any order of detention to determine if the defendant has become competent to proceed.

SDCL 23A-10A-15 (2018) (emphasis added).

[¶27.] Under the 2021 amendments, the text of SDCL 23A-10A-15 now specifically states that for Class C felonies, like the two Foshay faces, the court's commitment must be for a "term of years that the court determines is reasonable[.]" And, of course, even without these recent amendments, *Jackson* forbids committing a defendant "for an indefinite period simply on account of his incompetency to stand trial[.]" *Jackson*, 406 U.S. at 720, 92 S. Ct. at 1849.

[¶28.] The dissent argues that SDCL 23A-10A-15 applies only to Class A, B, and now C felonies, creating a statutory void into which defendants not accused of these types of offenses, and their commitment proceedings, disappear. The short response is that the Legislature has not absently overlooked this class of defendants. Under SDCL 23A-10A-14, *all* defendants who are not competent must be placed for competency restoration at either an approved facility or in an outpatient setting if they are not considered dangerous "*for a term consistent with § 23A-10A-15*" in every case where: (1) the circuit court finds "there is no substantial probability that the defendant will become competent to proceed within one year but there is a substantial probability that the defendant will become competent in the foreseeable future[;]" or (2) "the one year provided for in [SDCL

23A-10A-14] has run without a certificate of recovery being issued[.]" (Emphasis added.)

[¶29.]    Class A, B, and C felonies are treated specifically in the text of SDCL 23A-10A-15 because each may be punished by a sentence of life in prison. And without stating that the detention period for these offenses must be "a term of years[,]" the following sentence of SDCL 23A-10A-15 that prohibits detentions from "exceed[ing] the maximum penalty" would seemingly authorize an indefinite pretrial commitment for a defendant's life and, of course, implicate the limitations of *Jackson*.

[¶30.]    In any event, the completion of the term of years ordered pursuant to SDCL 23A-10A-15 triggers the statute's dismissal provision which serves as a terminal point for the criminal case. The 2021 amendments to SDCL 23A-10A-14 added a similar terminal point, but it is not as self-executing. Rather, it depends upon the court's determination that there is no substantial probability that the defendant will become competent in the foreseeable future. This, as we noted above, is the third option available under SDCL 23A-10A-14 for a circuit court assessing the likely duration of a defendant's incompetency.

[¶31.]    Here, the circuit court's commitment orders from 2018 to the present have lacked any findings regarding the likely length of Foshay's incompetency. As a result, Foshay has been committed, and "re-committed," each year since 2018 without any prospect that his commitment will end, short of attaining competency. This is true despite the fact that at every competency hearing after 2018, the expert evidence indisputably indicated that Foshay was unlikely to become competent

either within one year or within the foreseeable future. Had the court made a finding consistent with this evidence, Foshay could have avoided successive one-year re-commitments under the provisions of SDCL 23A-10A-14 and been committed to a term of years deemed reasonable by the court pursuant to SDCL 23A-10A-15. He then would have known with certainty when his commitment would end if he did not become competent.[8]

[¶32.] Omitting the critical finding as to the likely duration of a defendant's incompetency hinders the correct operation of the commitment statutes and could increase the risk that a commitment order for a defendant who is not competent to proceed violates the defendant's due process rights under *Jackson*. But our concern in this regard has been allayed by the Legislature's timely 2021 amendments to SDCL 23A-10A-14, which now allow for dismissal of the charges in cases of unremitting incompetency that do not result in a commitment under SDCL 23A-10A-15.

[¶33.] And although Foshay's successive one-year commitments were not authorized, he has not identified this noncompliance as a basis for relief; nor has he alleged the overall length of his commitment transgressed *Jackson*.[9] Instead, he

---

8. In cases where an institution issues a certificate of recovery which does not ultimately sustain a finding of competency, the statutory course is essentially unaffected. *See* SDCL 23A-10A-4.1 (2020) (stating that if "the court does not find . . . that the defendant has recovered [despite the issuance of a certificate of competency,] . . . the court shall order the defendant to be placed in a restoration to competency program . . . for a term consistent with this section and §§ 23A-10A-14 and 23A-10A-15"); SDCL 23A-10A-4.1 (2021) (same).

9. Throughout the commitment proceedings, neither party asked the circuit court to make findings regarding the likely duration of Foshay's

(continued . . .)

has invoked the dismissal provision of the amended SDCL 23A-10A-14, and it is at this point that we join the parties' arguments and the circuit court's decision to deny Foshay's motion to dismiss.

[¶34.] Because SDCL 23A-10A-14 now expressly requires the circuit court to dismiss the criminal charges if "there is no substantial probability that the defendant will become competent to proceed in the foreseeable future[,]" the circuit court was obligated to enter findings of fact pertaining to this standard. Here, the court's factual determination that it "cannot find that there is no substantial probability that Defendant will ever gain competency" was not responsive to the statutory text, and it was also clearly erroneous.[10]

[¶35.] The circuit court's decision appears to have hinged on Dr. Jungwirth's responses to questions from the court and the State regarding the impact COVID-19 protocols may have had on Foshay's most recent test scores and the potential of using different methods of instruction in an attempt to raise these scores. However, while Dr. Jungwirth agreed that, given this potential, she was not of the opinion that Foshay would never achieve competency, she reiterated that she was still of

_____

(. . . continued)
    incompetency, and, in fact, the parties agreed to Foshay's continued one-year commitments at each of the 2018, 2019, and 2020 competency hearings.

10. The State has the burden to prove "the mental competence of the defendant by a preponderance of the evidence[,]" SDCL 23A-10A-6.1, but neither chapter 23A-10A nor our decisions address which party has the burden of proving that there is no substantial probability that the defendant will become competent in the foreseeable future. However, it is not necessary to determine the question in this case. The parties have not addressed the issue in their submissions, and we do not perceive the assignment of the burden to be outcome determinative in this case, given the undisputed nature of the evidence at the hearing for the motion to dismiss.

the opinion there was no substantial probability that he would become competent in the foreseeable future. The circuit court's decision incorrectly conflated these two opinions which are, in fact, distinct.

[¶36.]       The standard set forth in SDCL 23A-10A-14 corresponds with Dr. Jungwirth's opinion that there was *no substantial probability* that Foshay would become competent in the *foreseeable future*. The fact that Dr. Jungwirth also testified that she could not say that Foshay would *never* achieve competency was not relevant to the circuit court's statutory determination. As such, the undisputed testimony at the hearing reflected that there was no substantial probability that Foshay would become competent in the foreseeable future, and the circuit court clearly erred in finding otherwise.[11]

## Conclusion

[¶37.]       The absence of a finding relating to the likely duration of Foshay's incompetency prevented his commitment under the more appropriate provisions of SDCL 23A-10A-15 and resulted in unauthorized annual "re-commitments" under SDCL 23A-10A-14 with no terminal point short of achieving competency. However, the parties have not noted this statutory noncompliance and have centered their arguments upon Foshay's motion to dismiss pursuant to the recently enacted dismissal provision of SDCL 23A-10A-14, which requires the court to dismiss the

---

11.    As it related to the statutory standard for dismissal, the COVID-19 testimony elicited from Dr. Jungwirth was a quintessential red herring. Foshay was not competent before the COVID-19 pandemic, and Dr. Jungwirth did not testify that there was a substantial probability that Foshay would, or would have, become competent in the foreseeable future without the COVID-19 distancing restrictions.

charges against the defendant where there is no substantial probability that the defendant will become competent in the foreseeable future. The circuit court erred when it applied this standard, and its principal factual finding regarding the likelihood that Foshay would achieve competency was clearly erroneous.

[¶38.] We reverse the circuit court's decision and remand the case for the entry of an order dismissing the criminal charges against Foshay. Although the record contains a recommendation by the director of the facility in which Foshay is currently placed that he continue to be held for the reasons set forth in SDCL 23A-10A-14, any further determinations as to those recommendations must be addressed through a civil commitment proceeding, as noted in this statute.

[¶39.] JENSEN, Chief Justice, and DEVANEY and MYREN, Justices, concur.

[¶40.] KERN, Justice, dissents.

KERN, Justice (dissenting).

[¶41.] I respectfully dissent from the majority opinion's factual finding that there is no substantial probability that Foshay will become competent within the foreseeable future. The majority opinion correctly holds that clear error review is applicable to the circuit court's factual determination concerning whether Foshay is likely to become competent within the foreseeable future. However, the majority opinion then proceeds to conduct what amounts to a cursory de novo review, substituting its own factual findings for those of the circuit court. In so doing, the majority opinion fails to consider evidence and testimony in the record that seriously undermines the credibility of Dr. Jungwirth's perfunctory statement that Foshay will likely remain incompetent for the foreseeable future.

[¶42.] In addition, as detailed in Section 1, I also dissent from portions of the majority opinion's analysis of SDCL 23A-10A-15 and note apparent gaps in the statutory language. Despite the issue not being raised or briefed by either party on appeal or as a basis for the motion to dismiss, the majority opinion reads additional criminal offenses into the limited class of felonies referenced in SDCL 23A-10A-15. Such improvisation usurps the authority and responsibility of the Legislature especially where, as here, the statutory scheme lacks clarity and would benefit from further revision. Instead of attempting to fix statutory defects that have no bearing on the ultimate resolution of this appeal, I would postpone any discussion or analysis of these matters until the Legislature has had an opportunity to exercise its lawmaking prerogative or until a more appropriate case where the issue is directly presented and the Court has the benefit of the parties' advocacy.

### 1. SDCL 23A-10A-15 applies to Class A, B, or C felonies and further interpretation is unnecessary in this case.

[¶43.] Before reaching the merits of Foshay's motion to dismiss, I first address the majority opinion's analysis of SDCL 23A-10A-15. "Resolving an issue of statutory interpretation necessarily begins with an analysis of the statute's text." *In re Implicated Individual*, 2021 S.D. 61, ¶ 16, 966 N.W.2d 578, 583 (citing *Long v. State*, 2017 S.D. 78, ¶ 12, 904 N.W.2d 358, 363). "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (quoting *Long*, 2017 S.D. 78, ¶ 13, 904 N.W.2d at 364). "This [C]ourt assumes that statutes mean what they say and that legislators have said what they meant."

*Farm Bureau Life Ins. Co. v. Dolly*, 2018 S.D. 28, ¶ 9, 910 N.W.2d 196, 199

(alteration in original) (quoting *In re Petition of Famous Brands, Inc.*, 347 N.W.2d

882, 885 (S.D. 1984)). "[R]esorting to legislative history is justified only when

legislation is ambiguous." *Id.* (alteration in original).

[¶44.] SDCL 23A-10A-14 provides, in relevant part:

> If the court finds there is no substantial probability that the defendant will become competent to proceed within one year but there is a substantial probability that the defendant will become competent in the foreseeable future, the court shall review the defendant's condition to determine appropriate placement and order the defendant to be placed in a restoration to competency program under the direction of an approved facility, committed to an approved facility, or to be placed on outpatient status for restoration to competency if the defendant is not considered to be a danger to the health and safety of others *for a term consistent with § 23A-10A-15. . . .*
>
> If the court finds that there is no substantial probability that the defendant will become competent to proceed in the foreseeable future, the court shall dismiss the criminal charges against the defendant.

(Emphasis added.)

[¶45.] Additionally, the 2018 version of SDCL 23A-10A-15 provides that:

> *If the most serious charge against the defendant is a Class A or Class B felony*, the order of detention shall be for any period of time deemed reasonable by the court or until the charges have been dismissed by the prosecution. The order for detention may not exceed the maximum penalty allowable for the most serious charge facing the defendant. Upon expiration of the order of detention, or after the expiration of the longest time the defendant could have been sentenced, whichever is longest, the criminal charges against the defendant shall be dismissed.

(Emphasis added.)

[¶46.] As noted by the majority opinion, the current version of SDCL 23A-

10A-15 now includes Class C felonies, two of which are pending against Foshay for

first-degree rape. Nevertheless, the majority opinion concludes that SDCL 23A-10A-15 must apply to all classes of offenses. But this interpretive result is not at all "clear" from the statutory text—in fact it is missing. The current version of SDCL 23A-10A-15, in its very first sentence, only references cases where "the most serious charge against the defendant is a Class A, B, or C felony." The section does not explicitly reference any other class of offenses, leaving a hole in the statutory scheme.

[¶47.] The only "clear" attribute of SDCL 23A-10A-15 is its ambiguity since the plain text of the statute does not specify what lesser felonies or misdemeanors, if any, would be subject to this provision. The majority opinion argues that the statutory prohibition of detention periods "exceed[ing] the maximum penalty" for the most serious charged offense applies to lesser felonies and misdemeanors that carry a maximum term of years. But this reading could yield illogical and unjust results. For example, incompetent defendants facing a Class 1 felony could be detained, without trial or commitment proceedings, for up to the maximum penalty of 50 years. It is an open question whether such detention constitutes a "reasonable period of time" under *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. E. 2d 435 (1972).[12] In short, the majority opinion steers SDCL 23A-10A-15 into choppy

---

12. According to the majority opinion, the "reasonable" requirement in the first sentence of SDCL 23A-10A-15 applies "specifically" to Class A, B, and C felonies. Under this interpretation, the statute does not supply the requirement that the order of detention for lesser offenses be for a "reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain [competence] in the foreseeable future." *Jackson,* 406 U.S. at 738, 92 S. Ct. at 1858. Detention

(continued . . .)

constitutional waters, which should be avoided if "fairly possible." *City of Chamberlain v. R.E. Lien, Inc.*, 521 N.W.2d 130, 131 (S.D. 1994).

[¶48.] Given these difficulties, any interpretative endeavor must attempt to plug the statutory hole in a manner that avoids constitutional complications. Principles of judicial restraint counsel that, at this juncture, any such statutory revision would be best addressed by the Legislature. At the very least, it is imprudent for this Court to attempt to resolve interpretative questions that are not at issue in the case before us and have not been raised or briefed by the parties. It is important to remember that Foshay cites the dismissal provision of SDCL 23A-10A-14—not statutory noncompliance—as the basis for his motion to dismiss. He has also not appealed any of his preceding commitment orders because both parties agreed to the successive one-year commitments at each of the annual competency hearings in 2018, 2019, and 2020.

[¶49.] Here, we need not reach any conclusion as to how the period of commitment for lesser offenses should be addressed because Foshay is charged with two Class C felonies. SDCL 23A-10A-15 plainly authorizes the circuit court, if it finds substantial probability of competency in the foreseeable future, to commit Foshay "for a term of years the court determines is reasonable or until the charges have been dismissed by the prosecution." As the majority opinion correctly notes, the circuit court's indefinite loop of successive one-year commitments does not comport with this provision. However, given that SDCL 23A-10A-15 would

---

(. . . continued)
for 25 or even 50 years could very well violate *Jackson* and thus render SDCL 23A-10A-15, as interpreted by the majority opinion, unconstitutional.

ostensibly authorize a term of commitment much longer than the five years already served by Foshay, it is difficult to conclude, at this juncture, that the statutory noncompliance has resulted in any meaningful deprivation of his constitutional rights.[13] Moreover, Foshay has been accorded a review hearing to assess his competency each year as required by SDCL 23A-10A-15. Our review should thus focus on the dismissal criteria of SDCL 23A-10A-14.

### 2.    The circuit court properly denied Foshay's motion to dismiss.

[¶50.]    The standard for clear error review is well-established:

> In applying the clearly erroneous standard, our function is not to decide factual issues de novo. The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence.

*Osman v. Karlen and Assocs.*, 2008 S.D. 16, ¶ 15, 746 N.W.2d 437, 443 (quoting *Fin-Ag, Inc. v. Feldman Bros.*, 2007 S.D. 105, ¶ 19, 740 N.W.2d 857, 862–63). Nevertheless, the majority opinion, donning the mantle of fact-finder, departs from this precedent in two important respects.

[¶51.]    First, the circuit court is best situated to evaluate the credibility and demeanor of the expert witnesses appearing before it and to accord expert opinions

---

13.    Interpreting *Jackson*, the Eighth Circuit has held that a four-year commitment to determine competency was not a due process violation where the defendant faced a mandatory minimum sentence of fifteen years if convicted. *See U.S. v. Ecker*, 30 F.3d 966 (8th Cir. 1994). Here, Foshay, if convicted, could be sentenced to life imprisonment. *See* SDCL 22-6-1(3). Thus, his "total time in confinement for purposes of competency determination [is] far less than the possible sentence." *Ecker*, 30 F.3d at 969.

the weight it deems appropriate. We have repeatedly held that "[f]act finders are free to reasonably accept or reject all, part, or none of an expert's opinion." *O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 17, 876 N.W.2d 486, 494 (quoting *Sauer v. Tiffany Laundry & Dry Cleaners*, 2001 S.D. 24, ¶ 14, 622 N.W.2d 741, 745). In short, "[t]his Court is not free to reweigh the evidence or gauge the credibility of the witnesses." *Miller v. Hernandez*, 520 N.W.2d 266, 272 (S.D. 1994). Notwithstanding this precedent, the majority opinion faults the circuit court for not adopting Dr. Jungwirth's conclusory statement that Foshay will not be competent within the foreseeable future.

[¶52.] In a *ten-page* incorporated memorandum opinion denying Foshay's motion to dismiss, the circuit court provided detailed factual findings supporting its decision to depart from Dr. Jungwirth's ultimate conclusion. Most significantly, the court noted that "Jungwirth's further testimony that competency restoration proceedings were hindered by COVID-19 protocols for all individuals participating in this programming gives the [c]ourt significant pause in deciding that this Defendant will *never* be restored to competency." Yet, the majority opinion strongly implies that the circuit court was obligated to take Dr. Jungwirth's conclusions at face value. Such an approach would depart from the circuit court's responsibilities as fact-finder and this Court's obligation to extend deference to the circuit court's factual findings.

[¶53.] Second, despite our responsibility to conduct a "thorough review of the evidence" on clear error review, the majority opinion lacks an in-depth analysis of Foshay's competency history or Dr. Jungwirth's testimony. *Osman*, 2008 S.D. 16,

¶ 15, 746 N.W.2d at 442 (citation omitted).  The record reveals that Foshay is twenty-five years of age and has been diagnosed with a mild intellectual disability and attention deficit hyperactivity disorder.  He currently resides at the Volunteers of America facility in Sioux Falls.  Although Foshay is currently receiving weekly in-person competency training, his training was *exclusively over the phone* during the pandemic.  Since his indictment for first-degree rape in 2016 and resulting commitment, Foshay has received annual competency evaluations.

[¶54.]        At the November 19, 2021 dismissal hearing, the court admitted and took judicial notice of Dr. Jungwirth's September 2021 competency evaluation report.[14]  Dr. Jungwirth conducted this annual evaluation over Zoom and administered two tests to measure competency—the Competence Assessment for Standing Trial for Defendants with Mental Retardation (CAST-MR), which is a multiple choice exam; and the Fitness Interview Test, Revised Edition (FIT-R), which provides questions to guide a structured interview focusing on criminal procedure and related matters.  On the CAST-MR, Foshay achieved a below-average correct response rate of 38%.

[¶55.]        Based on the results of these tests, Dr. Jungwirth found that Foshay's "overall intellectual functioning level [was] within the mild range of intellectual disability."  Foshay was compliant with attending competency training and only had a "mild impairment" in his ability to understand the nature of the legal proceedings against him.  Dr. Jungwirth also reported that Foshay was cooperative during the evaluation and had the ability to communicate with counsel and assist in his own

---

14.    The record also contains evaluation reports from 2018, 2019, and 2020.

defense.[15] Nevertheless, according to Dr. Jungwirth, Foshay was not presently competent to stand trial and was "not likely to be found competent in the next year." The report contained no determination as to the likelihood of Foshay's eventual rehabilitation beyond one year. Dr. Jungwirth concluded that having Foshay "review concepts more than once a week may help improve his scores from previous evaluations."

[¶56.] At the November 2021 hearing, Dr. Jungwirth acknowledged that she had certified Foshay as competent in 2018. She testified that her 2018 opinion was based on his previous 94% score on the CAST-MR: "I based that on him having a high number of correct answers when administered that assessment . . . . So he had a score above the [mean] for a person who is to be found competent with an intellectual disability." Moreover, Dr. Jungwirth did not render her conclusion that there was no substantial probability that Foshay will become competent in the foreseeable future until specifically prompted by defense counsel.

[¶57.] On cross-examination, Dr. Jungwirth candidly acknowledged that "there would still be some steps that could be taken to try to help rehabilitate [Foshay]." She told the circuit court:

> I think the Covid pandemic really did a lot of hinderance on not just [Foshay's] competency training, but with other people that I've evaluated that not being able to have face to face, having masks on, social distancing, a lot of those things really kind of influence a lot of the treatment or being able to be taught in a way that somebody can ret[]ain it.

---

15. Dr. Jungwirth noted that it would be difficult to predict whether Foshay could sustain a cooperative attitude under the stress of trial.

Dr. Jungwirth agreed that additional efforts could be made to assist Foshay in achieving competency, including in-person instruction, more frequent classes, and the use of teaching aids such as flashcards.

[¶58.] Dr. Jungwirth was specifically asked: "[Y]our opinion isn't that [Foshay] can't be restored to competence at some point; is that right? Just not in one year." She responded, stating, "I'm saying one year." On redirect, defense counsel asked Dr. Jungwirth if she believed "that there is a substantial probability that [Foshay] will become competent in the foreseeable future." She initially responded: "With his total score on the CAST-MR . . . needing to be over 90 percent, it could take quite a few years to [get to] the level of being competent." However, after defense counsel reiterated the question, Dr. Jungwirth stated, "No, I don't."

[¶59.] Next, the court asked Dr. Jungwirth whether the precipitous decrease—from 94% to 38%—in Foshay's CAST-MR correct response rate was a result commonly observed during the COVID-19 pandemic. Dr. Jungwirth explained:

> Actually yes, it is. You can look at it for competency, the regression that people are having with being able to retain information and learning is quite difficult. Working with children in the education system, you're seeing the same thing. When schools were shut down and not getting that face-to-face learning, in my opinion with the kids and students I've worked with, does seem very much the same thing; especially if they have cognitive disability of mental health issues.

[¶60.] Despite this context, the majority opinion unquestioningly relies on what it characterizes as Dr. Jungwirth's "undisputed testimony" that there was no substantial probability of Foshay attaining competence within the foreseeable future. Yet, Dr. Jungwirth's exact opinion on future competency is ambiguous. In

her report, Dr. Jungwirth only determined that Foshay was unlikely to become competent within the next year. She reiterated on cross-examination that her opinion applied to a one-year timeframe and did not foreclose the possibility that Foshay might become competent in the future. Although she rejected the possibility that Foshay had a substantial probability of becoming competent within the foreseeable future, Dr. Jungwirth did not define her understanding of "foreseeable future." Given the flow of questioning, Dr. Jungwirth could have very well understood "foreseeable future" as referencing a time period close to one year, which would not comport with SDCL 23A-10A-14.

[¶61.]　　　In any event, the circuit court is not required to adopt Dr. Jungwirth's testimony without scrutiny. Indeed, Dr. Jungwirth's previous 2018 report undermined her current conclusions. If Foshay, given his score of 94% on the CAST-MR, was competent to face charges only a few years ago, it is reasonable to conclude that he could likely become so again within the foreseeable future. In light of Dr. Jungwirth's varying opinions, the circuit court had ample reason to question the credibility of her conclusions at the hearing on the motion to dismiss.[16]

[¶62.]　　　The majority opinion also brushes aside Dr. Jungwirth's testimony— which was expressly referenced in the circuit court's memorandum opinion—that competency training was negatively impacted by the COVID-19 pandemic. Far from being "a quintessential red herring," this goes to the heart of whether Foshay's

---

16.　　Moreover, the circuit court was free to reject the opinion of Dr. Jungwirth in its entirety, just as it did in its 2018 order recommitting Foshay for further competency rehabilitation after Dr. Jungwirth found him competent to proceed.

decreased competency is due to exogenous factors that are unlikely to persist into the foreseeable future. Given Dr. Jungwirth's opinion that Foshay could benefit from additional rehabilitation efforts, the circuit court did not err in remanding the defendant for further training consistent with the recommendations in Dr. Jungwirth's report and testimony. Now that COVID-19 has dissipated to a significant degree, the additional rehabilitative services recommended by Dr. Jungwirth may indeed restore Foshay to his former levels of competence, which Dr. Jungwirth once certified were sufficient for him to stand trial.

[¶63.] I am thus unable to join the majority opinion's factual finding that "there is no [substantial] probability that Foshay will become competent in the foreseeable future." At the very least, the high standard to find that the circuit court committed clear error—one which requires a finding contrary to a clear preponderance of the evidence—has not been met. The majority opinion simply fails to consider, or even address, significant facts and testimony that support the circuit court's factual determination as to Foshay's competency. However, because of the statutory noncompliance identified by the majority, this case should be remanded to the circuit court for further hearing and the appropriate findings necessary for a term of commitment pursuant to SDCL 23A-10A-15.