#27381-a-JMK
**2017 S.D. 78**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MARK AND MARILYN LONG,
ARNIE AND SHIRLEY VAN VOORST,
TIM AND SARA DOYLE,
TIMOTHY AND JANE GRIFFITH
AND MICHAEL AND KAREN TAYLOR,         Plaintiffs and Appellants,

     v.

STATE OF SOUTH DAKOTA,                Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Retired Judge

* * * *

MARK V. MEIERHENRY
CHRISTOPHER HEALY
CLINT SARGENT of
Meierhenry Sargent, LLP
Sioux Falls, South Dakota            Attorneys for plaintiffs
                                     and appellants.


GARY P. THIMSEN
JOEL E. ENGEL III of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota            Attorneys for defendant
                                     and appellee.


* * * *

                                        ARGUED ON
                                        JANUARY 12, 2016

                                        OPINION FILED **11/21/2017**

#27381

KERN, Justice

[¶1.]     After Landowners prevailed against the State on a claim of inverse condemnation, Landowners requested that the State pay "reasonable attorney, appraisal and engineering fees, and other related costs" pursuant to SDCL 5-2-18 and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, which is codified at 42 U.S.C. §§ 4601–4655 (2012). The circuit court denied their request. Landowners appeal. We affirm.

## BACKGROUND

[¶2.]     In July 2010, Landowners[1] suffered significant flooding that damaged their real and personal properties. Landowners' properties are located on the west side of Highway 11, north of the intersection of Highway 11 and 85th Street. The South Dakota Department of Transportation (DOT) built Highway 11 in 1949 and the State maintains sole control of Highway 11. Highway 11 runs north and south through Lincoln and Minnehaha Counties and lies across the natural waterway known as Spring Creek.

[¶3.]     Landowners filed an inverse condemnation claim against the State and the City of Sioux Falls seeking damages due to the flooding of Landowners' properties after a heavy rainfall. A court trial was held in February 2014 on the issue of liability. The circuit court found the construction of Highway 11 and the inadequate culverts beneath it caused the flooding damage to Landowners' real and personal properties. In December 2014, a jury trial was held on the issue of

---

1.     Landowners include Mark and Marilyn Long, Arnie and Shirley Van Voorst, Tim and Sara Doyle, Timothy and Jane Griffith, and Michael and Karen Taylor.

-1-

damages. The jury awarded each set of Landowners individualized damages.[2] In August 2014, Landowners made a motion pursuant to SDCL 5-2-18 and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 as amended by the Surface Transportation and Uniform Relocation Assistance Act of 1987 (collectively, "the URA") for payment of "reasonable attorney, appraisal and engineering fees, and other related costs." The URA is codified at 42 U.S.C. §§ 4601–4655 (2012). The circuit court denied Landowners' motion based on *Rupert v. City of Rapid City*, 2013 S.D. 13, 827 N.W.2d 55. In January 2015, the circuit court issued its order denying fees and expenses. Landowners appeal.

[¶4.]       We restate Appellants' issue as follows:

> Whether a party who prevails on a claim of inverse condemnation arising under South Dakota Constitution article VI, § 13 is entitled to recovery of attorney's fees and litigation expenses under SDCL 5-2-18.

## STANDARD OF REVIEW

[¶5.]       "Questions of statutory interpretation and application are reviewed under the de novo standard of review with no deference to the circuit court's decision." *Deadwood Stage Run, LLC v. S.D. Dep't of Revenue*, 2014 S.D. 90, ¶ 7, 857 N.W.2d 606, 609 (quoting *Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 7, 739 N.W.2d 475, 478).

## ANALYSIS

[¶6.]       Landowners contend they are entitled to recovery of attorney's fees and litigation expenses under SDCL 5-2-18 as they prevailed on their claim of inverse

---

2.    The State appealed the circuit court's determination of liability and the jury's verdict. *See Long v. State*, 2017 S.D. 79, ___ N.W.2d ___.

condemnation. They assert that the South Dakota Legislature intended to adopt by reference the URA when it enacted SDCL 5-2-18. The purpose of the URA is to establish a uniform policy for the fair treatment of persons "displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance" and to ensure they do not suffer disproportionate injuries due to a program designed to benefit the public as a whole. 42 U.S.C. § 4621(b). Displaced persons are defined as "any person who moves from real property, or moves his personal property from real property" in response to "a written notice of intent to acquire or the acquisition of such real property in whole or in part for a program or project undertaken by a Federal agency or with Federal financial assistance[.]" 42 U.S.C. § 4601(6)(A)(i)(I). The URA contains a section permitting property owners to "be paid or reimbursed for necessary expenses as specified in section 4653 and 4654 of this title." 42 U.S.C. § 4655. Necessary expenses are defined, in part, in 42 U.S.C. § 4654(c) as "reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees[.]" Landowners further contend that 49 C.F.R. § 24.107 (2015) reinforces the State's obligation to pay the Landowners' inverse condemnation expenses.

[¶7.] The URA places several requirements on the receipt of federal funding related to the acquisition of land. It is within the power of Congress to "attach conditions on the receipt of federal funds . . . 'by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206, 107 S. Ct. 2793, 2795-96, 97 L. Ed. 2d 171 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474, 100 S. Ct.

2758, 2772, 65 L. Ed. 2d 902 (1980) (plurality opinion)). In certain instances, South Dakota has complied with federal directives in order to receive federal funding. *See* SDCL 35-9-4.1 (noting adoption of laws "under the duress of a funding sanction imposed by the United States Department of Transportation").

[¶8.] 42 U.S.C. § 4655 provides, in part:

> (a) Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—
>
> . . .
>
> (2) property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654 of this title.

The relevant "necessary expenses" are defined in 42 U.S.C. § 4654(c) which provides:

> *The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of title 28,* awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General *reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees,* actually incurred because of such proceeding.

(Emphases added.) Additionally, 49 C.F.R. § 24 contains the federal regulations implementing the URA. 49 C.F.R. § 24.107 addresses entitlement to certain litigation expenses. It provides:

> The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal,

and engineering fees, which the owner actually incurred because of a condemnation proceeding, if:

. . .

(c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding or the Agency effects a settlement of such proceeding.

[¶9.] The State argues our state statutes and case law do not authorize an award of attorney's fees and, consequently, Landowners have no relief under state law. The State further contends that the application of the URA in state law is permissive rather than mandatory. The State submits that Landowners are attempting to read into SDCL 5-2-18 the authority to assess attorney's fees. Lastly, the State argues that the primary purpose of the URA is to provide relocation assistance to persons displaced by condemnation actions instituted by federal agencies as set forth in 42 U.S.C. § 4621(b). In the State's view, the "most relevant portion of the URA for purposes of this appeal is 42 U.S.C. § 4654(c)," which it argues authorizes an award of attorney's fees in federal court for federal inverse condemnation claims. Further, the State submits that the federal regulations implementing the URA, specifically 49 C.F.R. § 24.107, cannot provide more rights or remedies than the URA itself. Relying on *City of Austin v. Travis County Landfill Co.*, 25 S.W.3d 191, 207 (Tex. App. 1999), *rev'd on other grounds*, 73 S.W.3d 234 (Tex. 2002), the State contends that § 24.107 "[a]t most . . . clarifies that section 4654 applies to governmental entities facing claims in federal court or the Court of Federal Claims."

[¶10.] South Dakota adheres to the "American Rule" for awarding attorney's fees. *Rupert*, 2013 S.D. 13, ¶ 32, 827 N.W.2d at 67. The "American Rule" provides "that each party bears the burden" of paying their own attorney's fees. *Eagle Ridge*

*Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 28, 827 N.W.2d 859, 867 (quoting *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98). However, exceptions to this rule exist. *Id.* One exception is that attorney's fees may be awarded to a prevailing party pursuant to a contractual agreement between the parties. *Id.* Another exception is that fees may be ordered "when an award of attorney fees is authorized by statute." *Id.* In determining whether a statute authorizes the award of attorney's fees, "[t]his Court has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power." *Rupert*, 2013 S.D. 13, ¶ 32, 827 N.W.2d at 67 (quoting *In re Estate of O'Keefe*, 1998 S.D. 92, ¶ 17, 583 N.W.2d 138, 142). Similarly, a party may recover costs only as specifically authorized by statute. *DeHaven v. Hall*, 2008 S.D. 57, ¶ 48, 753 N.W.2d 429, 444.

[¶11.] The circuit court, relying on the settled case law in *Rupert*, applied the American Rule and denied Landowners' request for attorney's fees. In *Rupert*, a property owner prevailed on a claim for inverse condemnation under Article VI, § 13 of the South Dakota Constitution for damage to trees on his property. *Rupert*, 2013 S.D. 13, ¶ 6, 827 N.W.2d at 60. Plaintiff requested an award of attorney's fees against the City pursuant to SDCL 21-35-23.[3] *Id.* The circuit court denied the

---

3. SDCL 21-35-23 provides:

> If the amount of compensation awarded to the defendant by final judgment in proceedings pursuant to this chapter is twenty percent greater than the plaintiff's final offer which shall be filed with the court having jurisdiction over the action at the time trial is commenced, and if that total award exceeds seven hundred dollars, the court shall, in addition to such taxable costs as are allowed by law, allow reasonable attorney fees and

(continued . . .)

request finding that the statute was specific to condemnation proceedings and not cases involving inverse condemnation. *Id.* ¶ 31, 827 N.W.2d at 67. In affirming, the Court reiterated that "attorney fees may not be awarded pursuant to a statute unless the statute expressly authorizes the award[.]" *Id.* ¶ 32, 827 N.W.2d at 67. Landowners herein argue this holding is inapposite as the claim for attorney's fees in *Rupert* was not made under SDCL 5-2-18. They contend, and we agree, that their request for attorney's fees under this statute is a question of first impression before this Court.

[¶12.]    "We begin our interpretation of a statute with [an analysis of] its plain language and structure." *Puetz Corp. v. S.D. Dep't of Revenue*, 2015 S.D. 82, ¶ 16, 871 N.W.2d 632, 637. SDCL 5-2-18 provides:

> The State of South Dakota . . . *may provide* relocation benefits and assistance to persons, businesses, and farm operations displaced as the result of the acquisition of land or rehabilitation or demolition of structures in connection with federally assisted projects to the same extent and for the same purposes as provided for in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (P.L. 91-646) as amended by Surface Transportation and Uniform Relocation Assistance Act of 1987 (P.L. 100-17), and *may comply* with all the acquisition policies contained in said federal act.

(Emphases added.) The State argues that "[n]othing in [SDCL] 5-2-18 expressly authorizes attorney fees as required by the American Rule[.]" Pointing to *Breck v. Janklow*, 2001 S.D. 28, ¶ 11, 623 N.W.2d 449, 455, the State contends that "the statute includes the word 'may' twice, which this Court has held is construed in the permissive sense." In response, Landowners submit that the plain meaning of the

_____

(. . . continued)

> compensation for not more than two expert witnesses, all as determined by the court.

statute is to provide assurances, under 42 U.S.C. § 4655, that all programs in South Dakota will comply with the URA's acquisition policies. Landowners contend that "the [L]egislature clearly intended to adopt and agreed to follow the policies of the URA in order to receive federal funds."[4] The URA, they assert, requires payment of attorney's fees and litigation expenses for successful inverse condemnation claimants.

[¶13.]    When conducting statutory interpretation, we determine the intent of a statute "from what the Legislature said, rather than what [we] think it should have said, and . . . must confine [ourselves] to the language used." *Puetz Corp.*, 2015 S.D. 82, ¶ 16, 871 N.W.2d at 637 (quoting *State v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162). "Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Id.*

[¶14.]    A reading of the plain language of SDCL 5-2-18 reveals no language referencing payment of attorney's fees or expenses. However, Landowners urge us to consider the legislative history of the statute, arguing that "[t]he clear intent of

---

4.    Landowners claim that the State is heavily dependent upon federal funding for its highway budget. The State contends that to support this assertion Landowners have alleged facts without citation to the record as required by SDCL 15-26A-60(5). Additionally, the State objected to documents in Landowners' appendix that were not presented to the circuit court and made part of the settled record. "Documents in the appendix must be included within, and should be cross-referenced to, the settled record." *Klutman v. Sioux Falls Storm*, 2009 S.D. 55, ¶ 37, 769 N.W.2d 440, 454 (citing SDCL 15-26A-60(8)). Factual assertions not supported by the record and documents not admitted into evidence are not considered herein.

the passage of the 1972 and 1988 Session Laws [codified as SDCL 5-2-18] was to enable state officials to give the federal government the assurance the State would comply with the [URA]." Landowners contend that the use of "[t]he words '*to comply with all the acquisition policies*' [in the 1972 Chapter 136 Session Law] is a complete acceptance of the federal policies by force of statute." Landowners do not address the effect of the substantive amendment to the statute in 1988, which no longer obligates the State to "provide relocation benefits and assistance" or "comply with all the acquisition policies" of the URA. Instead, as amended, the statute indicates that the State *may* provide such benefits and assistance and *may* comply with the URA's acquisition policies.

[¶15.] Regardless, the State urges us to decline Landowners' request to consider the legislative history of SDCL 5-2-18, asserting such review is not performed when statutory language is clear. We agree with the State. As the language of the statute is clear and unambiguous, our only function is to declare the meaning of the statute as clearly expressed. *Clark Cty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 28, 753 N.W.2d 406, 417. We do not review legislative history unless the statute is ambiguous. *Bertelsen v. Allstate Ins. Co.*, 2009 S.D. 21, ¶ 15, 764 N.W.2d 495, 500.

[¶16.] SDCL 5-2-18 indicates that the State *may* provide relocation benefits and assistance and *may* comply with the URA's acquisition policies. We have "held that the word 'may' should be construed in a permissive sense unless the context and subject matter indicate a different intention." *Breck*, 2001 S.D. 28, ¶ 11, 623 N.W.2d at 455.

> Although the form of verb used in a statute, i.e., whether it says something "may," "shall" or "must" be done, is the single most important textual consideration determining whether a statute is mandatory or directory, it is not the sole determinant. Other considerations, such as legislative intent, can overcome the meaning which such verbs ordinarily connote. In our search to ascertain the legislature's intended meaning of statutory language, we look to the words, context, subject matter, effects and consequences as well as the spirit and purpose of the statute.

*In re Estate of Flaws*, 2012 S.D. 3, ¶ 18, 811 N.W.2d 749, 753 (quoting *Matter of Groseth Int'l, Inc.*, 442 N.W.2d 229, 232 n.3 (S.D. 1989) (citing 2A Sutherland Stat. Const. § 57.03 at 643-44 (4th ed. 1984))). We hold that the plain language of this statute provides that compliance with the URA is permissive rather than mandatory.

[¶17.] Landowners rely on cases from Nevada and Kansas in support of their position that the URA permits imposition of litigation fees for successful plaintiffs, even without an independent state statute authorizing such payment.[5] Landowners' authorities, however, are readily distinguishable. Citing *McCarran International Airport v. Sisolak*, 137 P.3d 1110, 1129 (Nev. 2006), Landowners contend that "Nevada's method of adoption of the URA is strikingly similar to South Dakota's[.]"

[¶18.] In *McCarran*, the Nevada Supreme Court affirmed the lower court's determination that plaintiff was entitled to an award of attorney's fees and costs after prevailing on his claim of inverse condemnation for the taking of his airspace

---

5.    Landowners also rely on federal correspondence from the Comptroller General to members of Congress. As we have declined to consider the legislative history of the enactment of the URA or SDCL 5-2-18, we do not consider this type of communication to members of Congress.

near the Municipal Airport. *Id.* at 1128. While Nevada's statute does refer to the URA, there is an important distinction between Nevada's statute and ours. N.R.S. 342.105 mandates compliance with the Relocation Act, requiring that any entity subject to the act "shall provide relocation assistance" in contrast to the permissive language of SDCL 5-2-18. Such mandatory compliance is also noted in the statute's title: "Compliance with federal law required; adoption of regulations by Director of Department of Transportation[.]" Nev. Rev. Stat. Ann. § 342.105 (West).

[¶19.] The Landowners also rely on two Kansas cases, *Bonanza, Inc. v. Carlson*, 9 P.3d 541 (Kan. 2000), and *Estate of Kirkpatrick v. City of Olathe*, 215 P.3d 561 (Kan. 2009), both awarding attorney's fees to prevailing parties for their state inverse condemnation claims. Both are inapposite. Kansas has enacted statutes similar to the URA and adopted by reference both the URA and the federal regulations implementing it. *See* Kan. Admin. Regs. § 36-16-1; *Bonanza*, 9 P.3d at 543. Having adopted 49 C.F.R. § 24 and its amendments by reference, K.A.R. 36-16-1 provides "(b) The provisions of 49 C.F.R. Part 24 . . . and all amendments thereto, *shall* be applicable to all acquisitions of real property by the department of transportation . . . ." (Emphasis added.) The court in *Bonanza* held

> The authority for the award sought by the landowners are Kansas statutes and Kansas regulations enacted by the Kansas Legislature to comply with federal law. Under the Kansas regulations, state agencies receiving federal financial assistance are required to reimburse owners for incidental expenses and litigation expenses as provided in the federal statute as a precondition for receiving federal monetary assistance.

9 P.3d 541 at 547. These cases do not lend support for Landowners' claims because the courts of Nevada and Kansas were interpreting specific state statutes that mandated the payment of successful plaintiffs' litigation expenses. In contrast, the

-11-

South Dakota Legislature has not mandated compliance with the URA and has not abrogated the State's sovereign immunity for the payment of litigation expenses. As we noted in *Rupert*, "abrogation of sovereign immunity by the Legislature must be express." 2013 S.D. 13, ¶ 33, 827 N.W.2d at 67.

[¶20.] This Court has on one prior occasion interpreted the URA and SDCL 5-2-18—although the precise question of whether SDCL 5-2-18 mandates compliance with the URA was not addressed. *Rapid City v. Baron*, 88 S.D. 693, 227 N.W.2d 617 (1975). In *Baron*, the City of Rapid City and Baron disputed the value of Baron's property which was condemned by the City along with 1,300 other properties after the 1972 flood in order to create a flood plain. *Id.* at 694-95, 227 N.W.2d at 618. Baron sought admission of evidence regarding the values of other properties paid for by the City as part of its urban renewal program. *Id.* at 696, 227 N.W.2d at 618-19. Baron argued that the policy of the URA was to "assure consistent treatment for owners in the many Federal programs." *Id.* at 695, 227 N.W.2d at 618. The circuit court admitted the evidence and instructed the jury that they could consider the prices paid by the City to other owners when measuring damages. *Id.* at 695-96, 227 N.W.2d at 618-19.

[¶21.] We reversed, citing to Article VI, § 13 of the South Dakota Constitution, which requires that "just compensation" be paid as determined by the legal procedures established by the Legislature—not under the policy language from the URA. *Id.* at 698, 227 N.W.2d at 620. We determined that the court erred by failing to instruct the jury of the correct measure of damages and permitting evidence on the value of other properties taken by the City. *Id.* at 699, 227 N.W.2d

at 620. We noted that there was "no compelling reason to hold that the quoted phrase from [§] 4651, 42 U.S.C.A., even when read in conjunction with SDCL 5-2-18, in any manner modifies our Constitution, statutes or case law." *Id.* at 699, 227 N.W.2d at 620. Although we were not asked in *Baron* to determine if application of the URA was mandatory, we did find the circuit court erred by utilizing language from the URA inconsistent with South Dakota law. As discussed previously, South Dakota has adopted the American Rule requiring each party to bear its own attorney's fees unless exceptions exist. Landowners have put forth no compelling reason to modify our adoption of the American Rule.

[¶22.]    In forming our opinion, we also find persuasive two cases cited by the State: *Travis County Landfill Co.*, 25 S.W.3d 191, and *Randolph v. Missouri Highways & Transportation Communication*, 224 S.W.3d 615 (Mo. Ct. App. 2007). In *Travis,* the plaintiff who prevailed on a state inverse condemnation claim argued it was entitled to recovery of attorney's fees under the URA. 25 S.W.3d at 207. The Court of Appeals of Texas determined that, "section 4654 provides authority for the award of attorney's fees and expenses in actions brought in either federal court or the Court of Federal Claims. The Uniform Act contains no express authority for a similar award for state causes of action filed in state court." *Id.* The court also considered 49 C.F.R. § 24.107, stating that "[a]t most, section 24.107 clarifies that section 4654 applies to governmental entities facing claims in federal court or the Court of Federal Claims. It does not provide statutory authority for state courts to award attorney's fees for successful inverse condemnation claims arising under state law." *Id.; see also* 8A Patrick J. Rohan & Melvin A. Reskin, Nichols on

Eminent Domain § G20.05[3] (3d ed. 2015) (§ 4654 applies only to takings by a federal agency not to an award under a state condemnation action). Lastly, the court analyzed 42 U.S.C. § 4655, finding the section "governs the relationship between the City and the federal agency from which it seeks federal funds. It does not create a landowner's cause of action for attorney's fees in the event the City fails to comply with the land acquisition policies outlined in the statute." *Id.* at 208.

[¶23.]     In *Randolph*, the Missouri Court of Appeals considered the question of whether the URA and 49 C.F.R. § 24.107 authorize attorney's fees for a state claim of inverse condemnation. 224 S.W.3d at 619. Missouri, like South Dakota, follows the "American Rule" requiring "each party to bear the expense of their own attorney fees." *Id.* The court determined the URA "would only be applied where Missouri law does not expressly prohibit its application," noting that "Missouri law expressly prohibits the application of attorney fees absent statutory authority." *Id.* at 619-20. The court affirmed the lower court's denial of attorney's fees in accordance with the long-standing and strict application of the American Rule in Missouri and the prohibition of awarding costs against state agencies. *Id.* at 620.

[¶24.]     The circuit court's denial of Landowners' motion is supported by the holdings in *Travis* and *Randolph*. First, Landowners' claim was not brought in federal court or the Court of Federal Claims. The plain language of 42 U.S.C. § 4654(c) defining necessary expenses provides that it applies to "proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency[.]" Second, as the court held in *Randolph*, the application of the URA contradicts strict application of the American Rule.

## CONCLUSION

[¶25.] The circuit court did not err in denying Landowners' motion for attorney's fees and expenses as they are not authorized by the plain language of SDCL 5-2-18. While SDCL 5-2-18 incorporates by reference the provisions of the URA, its application is permissive rather than mandatory. Even if mandatory, the URA does not create a private cause of action in state courts for payment of litigation expenses in inverse condemnation cases unless mandated by state statute or implementing regulations. The circuit court did not err in denying Landowners' motion for attorney's fees and expenses. We affirm.

[¶26.] GILBERTSON, Chief Justice, and ZINTER, and SEVERSON, Justices, and BARNETT, Circuit Court Judge, concur.

[¶27.] BARNETT, Circuit Court Judge, sitting for WILBUR, Retired Justice, disqualified.

[¶28.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.