#30770-r-PJD
**2025 S.D. 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE EXPUNGEMENT
OF THE RECORD CONCERNING
JARRETT OWEN JONES.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Solicitor General
Pierre, South Dakota                    Attorneys for appellant State of
                                        South Dakota.


DAVID A. GEYER of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota                  Attorneys for appellee Jarrett
                                        Owen Jones.

* * * *

ARGUED
FEBRUARY 19, 2025
OPINION FILED **09/24/25**

#30770

DEVANEY, Justice

[¶1.] Jarret Jones was tried for murder after shooting Jon Schumacher. At trial, he maintained that he acted in self-defense, and the jury found him not guilty. Jones thereafter applied to the circuit court for an order expunging the record of his arrest and subsequent trial under SDCL 23A-3-27(3). The court held an evidentiary hearing on the motion, which the State opposed, and granted Jones's request for an expungement order. The State appeals, asserting that the circuit court abused its discretion in entering this order by failing to properly apply the governing statutory standards for granting an expungement. We reverse.

**Factual and Procedural Background**

[¶2.] On January 3, 2020, Jarrett Jones was arrested and charged with first-degree murder in violation of SDCL 22-16-4(1) after shooting and killing Jon Schumacher. A Brown County grand jury later issued an indictment charging the same offense. Jones filed a motion to dismiss, asserting he was entitled to statutory immunity under SDCL 22-18-4.8. Jones claimed he was justified in using deadly force against Schumacher under South Dakota's laws governing the use of force in self-defense. The circuit court held an evidentiary hearing and thereafter found that Jones was not immune from prosecution because the State presented sufficient evidence showing that the shooting of Schumacher was not justified.[1] The court

---

1.   The record of the criminal prosecution (06CRI20-000022) contains a video recording of the events leading up to Schumacher's shooting, although there is no audio. It also depicts the two gunshots Jones fired. With respect to the second shot, the video shows Jones pointing his gun, with a laser, at Schumacher while Schumacher is lying on the ground obviously severely injured, before firing the second shot.

-1-

thus entered an oral ruling, followed by a written order, denying Jones's motion to dismiss.

[¶3.] The case then proceeded to a jury trial. At the conclusion of the trial, the jury was instructed on the first-degree murder charge, as well as the lesser-included offenses of second-degree murder, first-degree manslaughter, and second-degree manslaughter. On March 8, 2022, the jury found Jones not guilty on all the offenses. The circuit court entered a judgment of acquittal on March 10, 2022.

[¶4.] Less than two years later, Jones filed a motion for expungement of the record of his arrest and subsequent trial under SDCL 23A-3-27(3) and served a copy of the motion on the prosecutors who tried the underlying case. As required by SDCL 23A-3-30, Jones asserted that the ends of justice and the best interest of the public, as well as his own best interest, would be served by an expungement.

[¶5.] The same circuit court judge who presided over the underlying criminal case considered Jones's expungement motion at a hearing held on June 26, 2024. At the outset of the hearing, the court granted Jones's request to take judicial notice of the underlying criminal file (06CRI20-000022). Jones testified, as did his daughter, Makayla. The State did not call any witnesses.

[¶6.] During his direct examination, Jones responded to a series of leading questions and agreed that expungement of his arrest record would serve the ends of justice and be in his best interest as well as that of the public. When asked why, Jones stated that he "was falsely accused of a crime [he] didn't do." Jones's counsel asked him if he felt "a stigma associated with that arrest for that crime [he] was acquitted of," to which Jones responded, "Absolutely, yes." Counsel then asked

Jones if the public's internet access to arrest records and social media concerned him. Jones replied, "Yes" and stated that "[i]t's available to anybody that's got an internet connection; something that's not true." Jones then confirmed he was aware that there was local media coverage of his charges and the trial, and he agreed that his arrest record would be more widely available to anyone with internet access.

[¶7.]     On cross-examination, the State asked Jones how it would be in the public's best interest that these records be expunged. Jones answered, *"Because I was acquitted."* (Emphasis added.) The State continued:

> State: How is it in the best interest of the public to take away their knowledge of what occurred here in Brown County?
>
> Jones: Because it's false news.

Upon further questioning, Jones agreed that it was not "false news" that he was arrested, indicted, and stood trial. He also acknowledged that there were extensive social media posts, including from his family members, and news media coverage of his arrest, indictment, immunity hearing, trial, and acquittal. In response to further questions from the State, Jones admitted that an expungement would not erase any of these matters that were already in the public domain.

[¶8.]     Changing topics, the State asked Jones whether he had been arrested for boating under the influence since his acquittal and he admitted that he had. He also admitted that, since his acquittal, he had broken the law on more than one occasion. When the State again asked Jones how an expungement would be in the best interest of the public, not just for him personally, Jones responded, "It's unfair stigma on myself." The State further inquired:

> State: Do you agree that it's in the best interest of the public that records be open?
>
> Jones: No.
>
> . . . .
>
> State: You believe it's in the best interest of the public that they have the ability to review things that happened in the court system?
>
> Jones: I don't know whose business it is.
>
> State: Is it important that people know about the facts when they're encountering you, whether in a business or a personal matter, that they know you shot and killed someone?
>
> Jones: No.

The State also asked Jones whether the public having full access to the court file would alleviate speculation about his case because the public could view the record, including the trial transcript and exhibits, and come to its own conclusion regarding what happened. Jones answered, "I suppose." He also acknowledged that access to this criminal file would allow the public to see that he was acquitted.

[¶9.] Makayla then testified on behalf of her father. She indicated that he was stigmatized because of his arrest for first-degree murder, and she offered reasons why she believed an expungement should be granted:

> Counsel: Do you think it's in the best interest of the public?
>
> Makayla: Yes, I do.
>
> Counsel: Why?
>
> Makayla: Because my dad's not a dangerous person. Ask anybody who knows anybody that - - his family, his friends, he's one of the most amazing people I've ever met.

Counsel: And do you think that the stigma that follows your father, that that's a detriment to your father?

Makayla: No.

Counsel: Do you feel it's in the best interest for your dad to have the arrest records sealed?

Makayla: Yes.

Counsel: Why?

Makayla: Because he was found innocent in this courtroom.

[¶10.]     On cross-examination, Makayla agreed that expungement would not erase what is on social media or in the news, or the public's opinions about her father. When asked what expungement would do, Makayla explained:

Makayla: It helps his life go on.

State: How?

Makayla: If he gets pulled over by police officers, they see that immediately. If he goes through TSA at an airport, they see that immediately. If he goes to a bank to get funding for his business, they see that.

State: Okay. Has he, at any time, been denied to get through the airport security because of it?

Makayla: No.

State: Has he ever had a business loan or anything denied because of this?

Makayla: Not that I'm aware of, but I'm not going to answer yes or no.

State: Okay. You're not aware of any.

Makayla: No.

> State: So your in-the-best-interest-of-the-public is really just in the best interest of your father that this be expunged, would you agree?
>
> Makayla: I agree.
>
> State: Okay. So it's not in the best interest of the public to be denied access to information about what occurred?
>
> Makayla: I guess I could agree to that.

[¶11.] At the conclusion of the testimony, the circuit court asked Jones's counsel what testimony or evidence had been presented to show an expungement was in the best interest of the public. In response, counsel referred to the stigma for Jones, "having these speculations in social media." The court then noted that, while an expungement would probably be in Jones's interest, there had to be clear and convincing evidence that it was in the best interest of the public.

[¶12.] In response to this point, Jones argued that anyone with internet and a credit card can access Jones's court record and post it online, and that having this information in the public sphere "harms the public discourse." He contended that the expungement statute exists for a reason and asserted that it is likely not for crimes like a DUI or a speeding ticket, but rather, for "heinous crimes that didn't occur[.]" He then claimed that a "heinous crime" did not occur here because "self defense negates murder." He argued that, in cases like this, where he was charged with a heinous crime and then acquitted, expungement should be granted.

[¶13.] In response, the State argued that if the Legislature wanted expungement to be automatic after an acquittal, it would have said so in the statute, but did not. The State pointed out that the Legislature instead imposed a requirement of "clear and convincing evidence that [an expungement] is in the best

interest of the public." The State argued that Jones did not present any evidence that expungement was in the public's best interest; his testimony pertained only to his own interest in negating the stigma of his arrest and prosecution. The State asserted that the public's interest is better served by open records which allow the public to understand the criminal justice system and to know, when interacting with Jones, what happened in this case. The State further noted that Jones did not bring forth any concrete examples of how his arrest record had negatively impacted him.

[¶14.] In rebuttal, Jones refuted the notion that the public's interest in open records should preclude the expungement of arrest records, arguing that expunging his arrest record would bolster and preserve the public's Second Amendment right. He asserted that someone who has exercised such right should not carry a stigma for doing so.

[¶15.] After hearing the testimony and arguments, the court noted that the governing statute was not particularly helpful and that there was no case law addressing the issues to be determined. The court found merit in both parties' arguments but stated, "*I don't know that there is necessarily clear and convincing evidence, but I'm not sure that that should carry the day*, either, of public's [sic] right." (Emphasis added.) The court noted Jones's acquittal, then commented, "I'm never going to say that you were innocent, but you were found not guilty," and "based upon that finding, the court is not going to second-guess the jury." The court expressed doubt whether there would ever be clear and convincing evidence that an expungement is in the public's best interest. The court noted, however, that Jones

"may have a better argument" that an expungement is appropriate for those who have exercised a right of self-defense and should not have to worry about their record hindering them after an acquittal.

[¶16.] The court continued: "*So even though I think it's weak on the clear and convincing evidence,* . . . I think that this is an appropriate case for an order for expungement based upon the statute and the lack of case law involved in this matter." (Emphasis added.) After mentioning again that Jones was acquitted, the court remarked, "I don't know what else a person could do over and above that."

[¶17.] After the court's oral ruling, the State requested written findings. The court directed Jones's counsel to submit proposals and advised the State to submit objections. The circuit court entered undisputed findings of fact setting forth the procedural history of Jones's criminal case, as well as the following findings, to which the State objected, that purportedly addressed the statutory requirements:

9. Even though Mr. Jones was acquitted, he still is burdened with a stigma associated with his arrest and the charges pressed against him.

10. The heinous nature of the charges against Mr. Jones carries an inherent stigma that even after acquittal fails to dissipate.

11. That when one is charged with a crime in an indictment, their only recourse is to proceed to trial and seek acquittal.

12. That Mr. Jones's self-defense with a firearm is one of the pillars constitutionally guaranteed to Mr. Jones as well as the other citizens of South Dakota and this great nation pursuant to the 2nd Amendment of the United States Constitution.

13. That Mr. Jones's arrest record and charging documents are available to anyone with an internet connection across

the world. Additionally, social media has exacerbated the ease at which the stigma associated with Mr. Jones's arrest record and charging documents can be perpetuated, albeit falsely.

14. That the ends of justice will be served by entry of an order of expungement in this matter as Mr. Jones was acquitted of all charges by a jury of his peers in Brown County, South Dakota.

15. That the best interest of the public will be served by entry of an order of expungement in this matter because it serves the public interest not to have its citizens carry with them the stigma of such a heinous nature after they asserted their constitutional right to a trial and were acquitted. This is especially true for a citizen who was acquitted after they asserted their constitutional right pursuant to the 2nd Amendment to self-defense.

16. That the best interest of Mr. Jones will be served by entry of an order of expungement in this matter because it serves his interest not to carry the stigma of being associated with such a heinous crime when he asserted his constitutional rights and was acquitted.

The court also entered three conclusions of law that parrot the language in SDCL 23A-3-30, stating that the ends of justice, the best interest of the public, and the best interest of Jones had been established by clear and convincing evidence.

[¶18.] The State appeals, asserting that the circuit court abused its discretion by granting an expungement after Jones failed to meet his burden of proving the governing standards under SDCL 23A-3-30 by clear and convincing evidence.

**Jurisdiction**

[¶19.] In its notice of appeal, the State cited SDCL 15-26A-3(2) or (4) as the basis for its right to appeal the court's order. We thereafter issued an order to show cause as to whether this Court has appellate jurisdiction to consider an appeal by the State from an order granting an expungement. After considering both parties'

responses, we entered an order allowing the appeal to proceed, having determined that appellate jurisdiction exists under SDCL 15-26A-3(4) because the order being appealed is a "final order affecting a substantial right, made in [a] special proceeding[]."

## Standard of Review

[¶20.]     This Court has not previously addressed our standard of review when considering an appeal of an order granting an expungement.  However, it is clear from the use of the term "may" in SDCL 23A-3-30 that a court's decision to grant an expungement is discretionary.  *See Long v. State*, 2017 S.D. 78, ¶ 16, 904 N.W.2d 358, 364 (noting "that the word 'may' should be construed in a permissive sense unless the context and subject matter indicate a different intention" (citation omitted)).  We therefore review such decisions under an abuse of discretion standard.  An abuse of discretion occurs when the court "exercise[s] its discretion 'to an end or purpose not justified by, and clearly against reason and evidence.'"  *State v. Abraham-Medved*, 2024 S.D. 14, ¶ 13, 4 N.W.3d 436, 440 (citation omitted).  A court's failure to apply the governing law is an abuse of discretion.  *See Pieper v. Pieper*, 2013 S.D. 98, ¶ 25, 841 N.W.2d 781, 788 (holding that the circuit court's application of the wrong burden of proof constitutes an abuse of discretion); *see Cook v. Cook*, 2022 S.D. 74, ¶ 25, 983 N.W.2d 180, 190 (noting that a "circuit court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law" (citation modified)).

[¶21.]     Issues involving matters of statutory interpretation and application are reviewed de novo.  *Expungement of Oliver*, 2012 S.D. 9, ¶ 5, 810 N.W.2d 350,

351.  Whether a legal standard required by statute or other governing legal authority is met by the established facts is generally a matter of law that is fully reviewable by this Court.  *See, e.g.*, *In re Guardianship of S.M.N.*, 2010 S.D. 31, ¶ 11, 781 N.W.2d 213, 218 (holding that "[w]hether the facts of the case constitute extraordinary circumstances of serious detriment to the welfare of the children . . . is a conclusion of law that we review de novo" (citation omitted)).  However, "factual findings are reviewed under the clearly erroneous standard." *In re Guardianship of Flyte*, 2025 S.D. 21, ¶ 30, 19 N.W.3d 513, 523 (citation omitted).

## Analysis and Decision

[¶22.]        Under SDCL 23A-3-27, an arrested person may seek a court order expunging his or her record of arrest under certain circumstances, including "[a]t any time after an acquittal[.]"  SDCL 23A-3-27(3).  The Legislature has defined "expungement" as "the sealing of all records on file within any court, detention or correctional facility, law enforcement agency, criminal justice agency, or Department of Public Safety concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system." SDCL 23A-3-26(1).  To obtain an order of expungement, the arrested person or defendant applies to the court having jurisdiction over the crime.  SDCL 23A-3-27. The court may then set the matter for a hearing and may require the filing of affidavits and the taking of evidence "as it deems proper."[2]  SDCL 23A-3-29.  SDCL

---

2.       Although SDCL 23A-3-29 states that a court "may" set a hearing date, the following caveat—"unless waived by the defendant, arrested person, prosecuting attorney, and victim"—suggests that a hearing is required absent such waivers.  Neither the circuit court, nor the parties, have mentioned how

(continued . . .)

23A-3-30 sets forth the following requirements that must be met before a court may grant the request for an expungement order:

> The court may enter an order of expungement upon a showing by the defendant or the arrested person *by clear and convincing evidence* that *the ends of justice* and *the best interest of the public* as well as *the defendant* or the arrested person will be served by the entry of the order.

SDCL 23A-3-30 (emphasis added). On appeal, the State argues that the circuit court failed to apply these standards and that Jones failed to establish by clear and convincing evidence that an expungement would serve not only his own best interest, but also the ends of justice and the best interest of the public.

[¶23.] The parties have differing views regarding what factors or considerations are encompassed by the terms "ends of justice" and the "best interest of the public," and how or whether these matters are distinct from what is in "the best interest" of a defendant. These broad concepts are not defined by statute, nor has this Court previously interpreted and applied these standards in the context of an expungement of a criminal record.

[¶24.] However, as noted by Jones, South Dakota's expungement statute shares the same language and standard set forth in our statute allowing a court to suspend the imposition of a felony sentence. SDCL 23A-27-13. That statute requires a court to be "satisfied that the ends of justice and the best interest of the public as well as the defendant will be served" by a suspended imposition of sentence. *Id.* However, unlike SDCL 23A-27-13, the expungement statute imposes

---

(. . . continued)

> or whether the interests of a named victim, or the victim's family, are implicated in an expungement proceeding involving an acquittal.

a burden on the defendant to show "by clear and convincing evidence" that the ends of justice and the best interest of the public, as well as his or her own, will be served by an expungement.

[¶25.]       Although we have not previously interpreted the meaning of each standard in SDCL 23A-27-13, we can still draw from what we have said regarding the application of that statute with respect to the granting of a suspended imposition of sentence.  In particular, we have noted that to "accomplish the purpose of the statute, an exceptional degree of flexibility in administration is essential." *State v. Elder*, 77 S.D. 540, 95 N.W.2d 592, 594 (1959) (interpreting predecessor to SDCL 23A-27-13).  More importantly, we have further noted that "[i]t is necessary to *individualize* each case, to give that careful, humane, and comprehensive consideration to the *particular situation of each offender* which would be possible only in the exercise of a broad discretion."  *Id.* (emphasis added) (quoting *Burns v. United States*, 287 U.S. 216, 220 (1932)).  This general directive seems equally applicable to a court's discretionary determination of whether an expungement is warranted under SDCL 23A-3-30.

[¶26.]       There are certain overarching principles that are apparent from the language the Legislature included in the statute.  First and foremost, the inclusion of an evidentiary burden indicates that the mere fact a defendant was acquitted is not a sufficient basis for granting an expungement.  To hold otherwise would render the language of SDCL 23A-3-30 meaningless with respect to an entire category of individuals who may apply for expungement under SDCL 23A-3-27.  *See Pete Lien & Sons, Inc. v. Zellmer,* 2015 S.D. 30, ¶ 37 n.16, 865 N.W.2d 451, 463 n.16 ("We do

not interpret laws to nullify or make meaningless any of the words actually used."
(citation omitted)). Second, the fact that the Legislature set a high burden that
each applicant must meet—"clear and convincing evidence that the ends of justice
and the best interest of the public as well as the defendant will be served"—signals
that the Legislature did not intend expungements to be routine. *See* SDCL 23A-3-
30. Third, a decision regarding whether to grant an expungement should be based
on the individualized circumstances of the defendant and the underlying record at
issue. In this case, it is evident that the court did not apply these principles when it
decided to grant Jones's expungement request.

[¶27.] Here, the State claims the circuit court abused its discretion by
incorrectly interpreting and applying SDCL 23A-3-30. In particular, the State
argues the court erred in its interpretation of the statute by essentially ruling that
an acquittal entitles a petitioner to an expungement. It notes the court's statement
that it did not "know what else a person could do over and above" being acquitted by
a jury to obtain an expungement. The State further maintains the court applied the
statute incorrectly by granting the expungement even though the court expressed
that Jones's arguments were "weak on the clear and convincing evidence."

[¶28.] It was Jones's burden to prove by clear and convincing evidence that
an order expunging his arrest and court records would serve the ends of justice, the
best interest of the public, and his own best interest. The evidence he presented
consisted of limited testimony pertaining to: (1) the fact that he was acquitted and
his claim that he was "falsely accused," and (2) the stigma attached to him as a

result of his arrest and trial in this case. However, Jones offered no evidence as to why the expungement of *his record* would be in the *public's* best interest.

[¶29.] In light of this absence of such an evidentiary showing by Jones, it is understandable why the circuit court did not determine, in its oral ruling, that Jones had met his burden of proving by clear and convincing evidence that an expungement would serve the best interest of the public. Although the court later entered written conclusions of law stating that Jones did establish all three requirements of the statute, the findings of fact entered by the court do not support such conclusions.

[¶30.] Most of the findings primarily focus on Jones's interest in removing the "stigma" associated with his arrest and prosecution for murder. Additionally, some of the written findings—which are better characterized as conclusions of law—recite the three standards and likewise focus on the stigma of Jones's arrest and the fact of his acquittal. For example, as to the ends of justice, the court entered a finding that states the ends of justice will be served by an expungement because "Jones was acquitted of all charges by a jury[.]" As to what is in the best interest of the public, the court entered one finding stating that it is in the public interest "not to have its citizens carry with them the stigma of such a heinous nature after they asserted their constitutional right to a trial and were acquitted . . . . [E]specially . . . a citizen who was acquitted after they asserted their constitutional right pursuant to the [Second] Amendment to self-defense."

[¶31.] These generic statements do nothing more than acknowledge that expungements are authorized for those who have been acquitted. Importantly, our

Legislature did not enact a categorical entitlement to an expungement for all who have been acquitted, or for any category of charged offenses, or asserted defenses, that have resulted in an acquittal. Thus, the court's findings do not support the conclusions that Jones met his burden to prove by clear and convincing evidence that the expungement of *his* criminal file would serve the ends of justice and the best interest of the public, as well as his own best interest.

[¶32.] Moreover, the circuit court's written conclusions of law, which we review de novo, are directly contrary to what the court stated on the record at the conclusion of the hearing. We have noted that "[e]vidence is 'clear and convincing' if it is 'so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Irvine v. City of Sioux Falls*, 2006 S.D. 20, ¶ 9, 711 N.W.2d 607, 610 (citation omitted). It is evident from the hearing transcript that the circuit court did not find with a "clear conviction, without hesitancy" that Jones presented clear and convincing evidence supporting the requisite standards. Instead, the court zeroed in on the *absence* of evidence showing why an expungement of Jones's records would be in the public's best interest. After expressing that it did not know whether "there is necessarily clear and convincing evidence" as to the public's best interest, the court then stated, contrary to the clear directive in SDCL 23A-3-30, that it "was not sure that that should carry the day." The court also qualified its ruling by noting that it was granting an expungement "even though" it believed Jones's claim was "weak on the clear and convincing evidence," and then noted as the basis for its ruling the "lack of case law" on such matters. It is apparent from

the circuit court's statements that it did not ultimately hold Jones to his burden of proof under SDCL 23A-3-30 when it granted his request for an expungement. Because of this failure to apply the statutory requirements, we conclude the court abused its discretion when granting the expungement.

[¶33.] Our disposition here hinges primarily on the *absence* of evidence pertinent to a determination of whether the public's best interest would be served by an expungement. However, this appeal presents the opportunity to provide guidance to courts tasked with applying the terms of SDCL 23A-3-30, particularly, as to what factors may be considered when determining if the requisite evidentiary showing has been met. The State and Jones have presented their views as to what should be considered in this regard.

[¶34.] The State noted, in its appellate briefs, that courts in other states have considered concepts similar to those in our expungement statute when addressing whether to grant an expungement. Although other states' statutes provide different criteria for expungement, the manner in which other states have interpreted what is in the "public interest" and other similarly broad concepts is helpful in discerning what our Legislature intended when requiring such findings before an expungement may be granted. We frequently look to decisions from other jurisdictions when considering matters of first impression. *See, e.g., People in Int. of C.R.W.*, 2021 S.D. 42, ¶ 32, 962 N.W.2d 730, 741 (considering how other states reconcile the obligation of an attorney representing a child in an abuse and neglect proceeding "to protect a child's best interest" with the obligation to advocate for the

-17-

child's wishes).  This can be particularly helpful in determining what factors may come into play when considering abstract concepts like those in SDCL 23A-3-30.

***Ends of justice***

[¶35.]        While the phrase "ends of justice" appears in many statutes and in our case law, it is an abstract concept that evokes different concerns, depending on the context in which it is used.  We contemplated the meaning of this term when addressing the application of a statute authorizing a defendant to be released on bail while an appeal is pending if "the ends of justice demand" such release.  *City of Sioux Falls v. Marshall*, 48 S.D. 378, 204 N.W. 999, 1002 (S.D. 1925) (interpreting § 5039, Rev. Code 1919).  In that context, we stated, "By justice we mean that end which ought to be reached in a case by the regular administration of the principles of law as applied to the facts."  *Id.* (citation omitted).  The Court further noted that "[f]undamental justice is an abstraction, but the administering of justice in any given case is always a relative matter as to the various parties involved, and their respective rights, privileges, and immunities."  *Id.* at 1004.  Like expungements, we noted that bail is not a matter of right, "but of legal favor."  We then considered various factors, such as the defendant's character and reputation, his likely course of conduct while on bail, and the need to protect the public from a habitual offender.  *Id.* at 1005.

[¶36.]        When referring to the "ends of justice" standard here, Jones focuses on the end result of his jury trial—the fact of his acquittal—and suggests this necessarily means that the ends of justice support an expungement.  However, because there is no categorical right to an expungement after an acquittal under

our statutory scheme, whether the ends of justice are served by the sealing of every record associated with Jones's arrest, prosecution, and disposition requires a consideration of additional factors beyond his acquittal.

[¶37.]    The State, drawing from opinions addressing expungements in other states, argues that a consideration of the ends of justice should focus on any adverse effects suffered by a petitioner as a result of an existing arrest record. Although none of the cases the State cites involved statutes specifically referring to the "ends of justice," they do involve an individualized analysis, much like this Court's analysis of the "ends of justice" in *Marshall*, of the particular facts and competing interests of the parties at issue.

[¶38.]    In *People v. Carroccia*, the Illinois appellate court affirmed a lower court's denial of an expungement request from a defendant who, like Jones, had been arrested and charged with first-degree murder but was acquitted by a jury. 817 N.E.2d 572 (Ill. App. Ct. 2004). The Illinois expungement statute at issue broadly authorizes a court to expunge arrest records and seal court records "until further order of court upon good cause shown" pertaining to a defendant who had been charged with a municipal, misdemeanor, or felony offense, but then was "acquitted or released without being convicted." *Id.* at 575−76 (citation omitted). The Illinois statute contains one specific criteria: only defendants who had not been previously convicted of a criminal or municipal offense are eligible to petition for expungement. *Id.* But beyond that, the appellate court noted, the statute provided no other guidance to a trial court deciding whether to exercise its discretion and grant the request. *Id.* at 576.

[¶39.]    The *Carroccia* court recited several factors it deemed appropriate for consideration in a determination whether to grant an expungement petition. These include:

> the strength of the [State's] case against the petitioner, the reasons the [State] gives for wishing to retain the records, the petitioner's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied.

*Id.* at 576–77 (citations omitted). The court also noted that a defendant's "postdisposition behavior may be relevant . . . [even] where the [defendant] was found not guilty." *Id.* at 577 (alterations in original) (citation omitted). As to the adverse consequences facing a defendant, the court noted in *Carroccia* that such consequences could include "damage to the person's dignity or reputation and lessened opportunities for schooling, employment, credit, or professional licensing." *Id.* at 578 (internal citations omitted).

[¶40.]    Like our expungement statute, the court explained in *Carroccia* that the terms of the statute at issue "strongly suggest[] that there is no presumptive right to expungement[,] even after acquittal," and thus, "the trial court is vested with broad discretion in ruling on petitions to expunge." *Id.* at 579. The court then turned to the factors cited by the trial court and determined that the court did not abuse its discretion in denying the expungement petition. *Id.* While noting the defendant's age (52) and lack of criminal history weighed in favor of expungement, the court found other factors weighed against it, including: the strength of the evidence showing that "the State 'had every right to proceed [with the case],'" the defendant had a pending federal civil rights suit against the arresting authorities,

the defendant worked for a family business which made expungement unnecessary for employment purposes, little time had passed since the arrest, and there was "no specific evidence of any adverse consequences." *Id.* The non-exhaustive list of factors cited in *Carroccia*, if applicable to the particular case and circumstances before the court, may appropriately be considered by a circuit court when determining under SDCL 23A-3-30 whether a petitioning defendant has proven by clear and convincing evidence that an expungement would serve the ends of justice.

### Best interest of the public and of the defendant

[¶41.]	There is naturally some overlap between the factors that are considered when determining if the ends of justice are served and when determining what is in the best interest of both the public and a defendant. Also, each of these concepts may look different depending on the perspective from which it is viewed. In many cases, the interest of the public in maintaining access to arrest and court records may not align with a defendant's interest in having them sealed. South Dakota's expungement statute nevertheless tasks a petitioner with proving all three, and not simply with general arguments, but by clear and convincing evidence.

[¶42.]	The phrase "best interest of the public" is not statutorily defined. In another context, we have recognized that the term "public interest" is not a term that is easy to define. *See Matter of SDDS, Inc.*, 472 N.W.2d 502, 516 (S.D. 1991) (Henderson, J., concurring) (noting, in the context of what is in the "public interest" when considering whether to grant a permit for solid waste disposal, that such term "is not susceptible of precise definition" (citation omitted)). Nevertheless, the

language of the phrase must be given meaning. *See State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164 (noting that "where possible the law must be construed to give effect to all its provisions").

[¶43.] Logically, an analysis of whether an expungement request will be granted should take into consideration the public interest in access to criminal proceedings and their related records. It is well-recognized that, subject to limited exceptions, such proceedings are open to the public. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–73, 580 (1980) (tracing the history of the presumption of openness in the conduct of criminal trials and declaring that the public has a constitutional right to attend criminal trials). Indeed, it is understood that the public nature of a criminal trial "also protects some interests that do not belong to the defendant. After all, the right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused." *State v. Uhre*, 2019 S.D. 8, ¶ 15, 922 N.W.2d 789, 795–96 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 298–99 (2017)). Such openness serves the public interest by facilitating respect and confidence in the criminal justice system and in the outcome of criminal proceedings. *See Richmond Newspapers*, 448 U.S. at 572 (noting that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing").

[¶44.] Moreover, with respect to the court record associated with a judicial proceeding, as a general rule, such information "is accessible to the public except and as prohibited by statute or rule[.]" SDCL 15-15A-5. While the expungement

statutes allow the sealing of a court record, it is helpful to consider the policies behind our rules regarding access to such records when determining if prohibiting access to records in a particular case serves the public interest and those of an acquitted defendant. Relevant here, our rule for access to court records provides for access in a manner that:

(1)     Maximizes accessibility to court records,
(2)     Supports the role of the judiciary,
(3)     Promotes governmental accountability,
(4)     Contributes to public safety,
(5)     Minimizes risk of injury to individuals,

. . . .

SDCL 15-15A-1.

[¶45.]     Jones acknowledges that the public has a right to access some records, but he argues that if depriving the public of that access rendered an expungement unavailable, then no expungement would ever be granted. He notes that the objective of an expungement order, which requires, in part, the sealing of "all records relating to a defendant or arrested person's arrest, detention, indictment or information, trial and disposition[,]" is to "restore the defendant or arrested person, in the contemplation of the law, to the status the person occupied before the person's arrest or indictment or information." *See* SDCL 23A-3-31, -32. Citing SDCL 23A-3-31, Jones also asserts that "law enforcement agencies, prosecuting attorneys, and courts in sentencing the arrested person for subsequent offenses" could still access expunged records.[3] While it is true that such entities and

---

3.     In response to the State's argument that Jones's record of arrest for first-degree murder could potentially be used later as evidence under SDCL 19-19-

(continued . . .)

individuals may retain some access to records, after an expungement the general public will no longer have access to the record of what occurred in a defendant's court proceeding. Whether such loss of access is in the "best interest of the public" may depend on the nature of the case. Without access to the court record, those interested in the case will be deprived of the ability to review the record and make their own assessment of the claims and issues raised therein.

[¶46.] In addition to the public's interest in open court proceedings, other courts have considered additional factors when addressing whether precluding access to records of criminal proceedings is contrary to the public interest. For example, New Jersey authorizes expedited expungement of certain types of convictions, if an applicant has not been convicted of a crime since the time of his conviction and the court finds that expungement "is *in the public interest*, giving due consideration to the nature of the offense, and the applicant's character and conduct since conviction." *See In re Kollman*, 46 A.3d 1247, 1256 (N.J. 2012) (emphasis added) (interpreting N.J.S.A. 2C:52-2a); *In re LoBasso*, 33 A.3d 540, 549–50 (N.J. Super. Ct. App. Div. 2012).

---

(. . . continued)

404(b) or for consideration of future dangerousness, Jones notes that this Court has held that "[t]he conduct leading to [an] arrest and acquittal is not itself expunged." *See In re Jarman*, 2015 S.D. 8, ¶ 11, 860 N.W.2d 1, 6 (rejecting the claim of an applicant seeking law enforcement certification that testimony from his prior girlfriend about a domestic assault for which he had been charged and acquitted should not have been considered when assessing his character because it related to "expunged conduct"); *see also* SDCL 23A-3-26(1) (stating that "[e]xpungement does not imply the physical destruction of records").

[¶47.] Although New Jersey's statutory scheme for expungements differs from ours, we think the court's analysis in *LoBasso* with respect to the "public interest" standard, similar to the standard in SDCL 23A-3-30, provides useful insight here. In *LoBasso*, the New Jersey appellate court affirmed the denial of a petitioner's expedited expungement request. In doing so, the court identified factors to guide the exercise of discretion when a court assesses whether an expungement is in the "public interest." *Id.* at 549. The court determined that "the conduct and character" factor associated with an assessment of the public interest could include whether a petitioner "has engaged in activities that have limited the risk of re-offending, or has avoided activities that enhanced that risk," such as obtaining job training or education, meeting other legal obligations like child support, maintaining family and community ties, and severing relationships with persons engaged in criminal activities. *Id.* at 550. The court also determined that, in addition to considering the nature of the offense, "facts related to an arrest that did not lead to a conviction" could also be considered "if supported by cognizable evidence[.]" *Id.*

[¶48.] In *LoBasso*, the court further noted that the public interest analysis may include "cognizable evidence that the conviction record actually has impeded the petitioner's efforts to resume a productive, law-abiding life." *Id.* at 552. The court noted that successful reentry "is in the public interest as it promotes public safety, and enhances the lives of the ex-offenders and communities where they live." *Id.* Ultimately, the *LoBasso* court affirmed the denial of an expungement because the petitioner provided "relatively little cognizable evidence" that showed how he

conducted himself since his conviction and no evidence regarding how that conviction impacted him. *Id.* at 553.

[¶49.] The factors considered in *LoBasso*, if applicable to a particular defendant petitioning for an expungement, are logically relevant to a consideration of what is in the public's best interest. Some of these factors, such as whether an arrest record is impeding a petitioner's attempts to lead a productive, law-abiding life, may also be relevant to the requirement in our statute that an expungement is in the defendant's best interest.

## Conclusion

[¶50.] In Jones's case, there was simply no evidence offered to show that an expungement of the records of his arrest and court proceeding would serve the public's best interest or the ends of justice. We therefore reverse and vacate the order of expungement entered by the circuit court.

[¶51.] JENSEN, Chief Justice, and KERN and SALTER, Justices, and CLAPPER, Circuit Court Judge, concur.

[¶52.] CLAPPER, Circuit Court Judge, sitting for MYREN, Justice, who deemed himself disqualified and did not participate.